**STATE of Maine**

v.

**Jeffrey FRANCIS.**

Supreme Judicial Court of Maine.

Argued March 16, 1988.
Decided March 29, 1988.

R. Christopher Almy, Dist. Atty., Philip C. Worden (orally), Asst. Dist. Atty., Bangor, for State.

J. Hilary Billings (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

Defendant Jeffrey Francis appeals his conviction by a Superior Court (Penobscot County) jury of two counts of Class B manslaughter, 17–A M.R.S.A. § 203(1)(A) (1983), and one count of operating a motor vehicle while under the influence of intoxicating liquor (OUI), 29 M.R.S.A. § 1312–B (Supp.1987). On appeal defendant challenges the receipt at trial of statements of defendant previously ordered suppressed under the *Miranda* rule, the admission of photographs of defendant's car after it had been altered, and the jury instructions on the meaning of "under the influence" in Maine's OUI statute. Defendant takes nothing on any of his appellate contentions.

Francis's convictions arose out of an accident on Route 6 in Lee on September 1, 1985, when he lost control of his automobile and collided with a pickup truck driven by Susan Daigle. Although neither driver was seriously injured, two passengers in defendant's car were killed in the accident. After the collision the police had to use a so-called Jaws of Life device to extricate the occupants of defendant's car.

A Superior Court justice different than the justice who presided at trial entered a pretrial order suppressing statements that, though voluntarily made by defendant at the scene of the accident, were made without the benefit of *Miranda* warnings. In the suppressed statements, defendant had explained to the arresting police officer that "he got off the shoulder [of the road] and lost control of [his] vehicle," but had said nothing about how fast he had been traveling. Having apparently overlooked

the content of the suppression order, the prosecutor during direct examination elicited from the police officer that explanation by defendant. The record contains nothing to suggest that the prosecutor intentionally violated the suppression order. To the contrary, later in the trial he brought the order to the court's attention, and even at that time neither he nor the presiding justice nor defense counsel seemed conscious that any of the suppressed statements had come in earlier.

■ The State now agrees with defendant that the suppressed statement never should have come in at trial. Nevertheless, an appellate court treats as harmless an erroneous admission of evidence when the "court believes it highly probable that the error did not affect the judgment." *State v. True*, 438 A.2d 460, 467 (Me.1981). Given the great weight of testimony presented at trial, including the testimony of defendant himself, we conclude that the erroneous receipt of the suppressed statement was indeed harmless. Defendant's own testimony made clear that on the day of the accident he had consumed several ounces of whiskey as well as some beer. He explained at great length to the jury how he lost control of the car while distracted in conversation with his passengers, that once the car dropped off the right shoulder of the road he tried to pull it back onto the pavement but oversteered so substantially that the rear end of his car first swung around to the right and then so drastically around to the left as to be facing in the direction his car was moving and fully in the wrong lane of traffic. Defendant testified that he did not apply his brakes "until the very end," just before striking the oncoming pickup. Two hours after the accident, defendant's blood-alcohol content tested at .14%. Furthermore, an accident reconstruction expert testified that when defendant lost control of his vehicle he was traveling between 90 and 103 miles per hour and at the time of the collision between 70 and 95 miles per hour. Based upon the trial testimony, we find it highly probable that the improperly admitted statement did not affect the jury's conclusions.

■ We disagree with defendant's contention that the presiding justice improperly admitted photographs of defendant's automobile taken after the Jaws of Life device had removed its roof. Defendant argues that the danger the jury would be misled by photographs of the automobile after it had been so altered would substantially outweigh their probative value under M.R.Evid. 403. "[T]he admissibility of photographs lies within the discretion of the trial justice," and we review his decision only for a clear abuse of that discretion. *State v. Conlogue*, 474 A.2d 167, 170 (Me. 1984). An officer of the Maine State Police trained in accident reconstruction took the photographs the evening of the accident to preserve evidence of the severity of crush damage to the left rear side of defendant's automobile. Both he and another accident reconstruction expert relied on evidence of that crush damage along with extensive evidence of tire skid marks to estimate the speed of defendant's vehicle at the time it struck the pickup truck. The state police officer explained to the jury that he had taken the pictures after the Jaws of Life had worked on the car. The photographs initially came in at trial through the driver of the pickup truck; she testified that the Jaws of Life had in fact removed the roof of defendant's automobile immediately after the accident and before the pictures were taken but that nevertheless the pictures accurately represented the automobile's left rear side which had struck her pickup.

Given the testimony surrounding the admission of the photographs, we cannot say that the court abused its discretion in ruling that any possibility of the photographs' misleading the jury did not substantially outweigh their probative value. Testimony explaining that the Jaws of Life had removed the car's roof before the pictures were taken, when coupled with testimony that the left rear side of defendant's automobile as represented in the photographs was substantially unchanged by the Jaws of Life device, allowed the jury to assess reasonably the reliability of the photographs' depictions. *Cf. State v. Landry*,

485 A.2d 218, 220 (Me.1984) (photographs depicting scene that had been altered since crime were properly admitted on testimony that they were "fair and accurate representations").

■ Finally, we reject out of hand defendant's contention that the presiding justice erroneously refused to instruct the jury that under Maine's OUI statute the State must prove that defendant's driving ability was in fact "impaired" by the alcohol he had consumed. In *State v. Griffin*, 459 A.2d 1086, 1091 (Me.1983), we rejected that very argument, holding that the legislature throughout its amendments of the OUI statute has intended to protect the public "against persons who drive under the influence of intoxicating liquor *regardless of the extent of that influence*," making it "unnecessary to determine whether that influence adversely affected the operator's driving ability." (Emphasis added) *See also State v. Bean*, 430 A.2d 1109, 1110–11 (Me. 1981). Defendant provides us with no reason to overrule our earlier decisions on this matter.

The entry is:

Judgment affirmed.

All concurring.