STATE of Maine

v.

Lionel J. DUBE.

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 3, 1991.

Decided Oct. 30, 1991.

Neale T. Adams, Dist. Atty., John D. Pluto, Deputy Dist. Atty., Caribou, for the State.

Marshall A. Stern, Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, J.

McKUSICK, Chief Justice.

After a jury trial in the Superior Court (Aroostook County, *Pierson, J.*), defendant Lionel J. Dube was convicted of one count of Class A gross sexual assault, 17–A M.R.S.A. § 253 (Supp.1990). On appeal defendant contends that the court committed reversible error in admitting out-of-court statements of the victim, opinion testimony on credibility, and allegedly irrelevant evidence. We affirm his conviction.

The victim, a relative of defendant, testified as follows: On February 25, 1990, the victim, her twin sister, and their older sister spent the night at defendant's home in Eagle Lake. Defendant gave beer and wine to the victim, who was then aged fifteen. Over the course of the evening defendant repeatedly asked her if she was a virgin, if she "kept her mouth shut when things happen," and if she would perform oral sex on him. Defendant told her to sleep upstairs, while he sent her sisters to sleep in the basement. The victim went to sleep and awoke to find defendant in her room. He by force had sexual intercourse with her.

On the following morning, the victim told her twin sister of the incident; at trial the twin sister testified that the victim told her that defendant "did it to me.... He raped me." On March 16, 1990, the victim told Nancy Dumont, her school principal, of the incident; at trial Dumont testified that the victim identified defendant as her assailant. On March 19, 1990, State Police Detective James Madore interviewed the victim; at trial Madore was asked, "Did [the victim] ever tell you that somebody other than [defendant] was responsible for what happened," and he responded, "No, she did not."

## I.

### Out–of–Court Statements of the Victim

■ Defendant contends that it was error to admit the testimony of the twin sister, the school principal, and the detec-

tive repeating the complaints the victim made to them. On review of the record of defendant's trial, we find no reversible error in the admission of that testimony.

■■■ "In general, the out-of-court statement of a prosecutrix may be admissible on any of three distinct grounds: (1) to show that in fact a complaint has been made, (2) to prove the truth of the matter asserted if the statement qualifies as an excited utterance, and (3) to rebut a charge of recent fabrication or improper motive." *State v. Lafrance*, 589 A.2d 43, 45 (Me. 1991). In the case at bar the victim's out-of-court statements were not admissible under the "first complaint rule," which admits only the bare fact that a complaint has been made but not further details. *See State v. True*, 438 A.2d 460, 464–65 (Me. 1981). Nor were the statements admissible as excited utterances. The earliest complaint was not made by the victim to her twin sister until the morning following the alleged rape and was thus a "product of conscious reflection," *id.* at 465, not made "under the stress of excitement caused by the event," M.R.Evid. 803(2). Finally, at the time the victim's out-of-court statements were introduced in evidence as part of the State's direct case, they were not admissible as prior consistent statements rebutting a charge of recent fabrication or improper motive because, at that stage of the trial, defendant had not yet raised the inference of recent fabrication. Those statements, however, became admissible later in the trial when the testimony of a defense witness did imply recent fabrication. The matter thus comes down to improper order of proof.

■■ Defendant entered no objection to the admission in evidence of the victim's out-of-court statements to her twin sister, her school principal, and the detective either at the time that evidence came in during the State's direct case or at any other time. Since their testimony came in without objection, defendant's conviction must stand unless the receipt of the testimony as part of the State's direct case rather than in rebuttal constituted "obvious error affecting substantial rights." M.R.Evid. 103(d).

The obvious error test requires the reviewing court to apply its best judgment to the entire record of the case to determine whether unobjected-to evidence that was inadmissible at the time received at trial was in its probable effect on the jury a seriously prejudicial error. *See State v. True*, 438 A.2d at 467. "The particular circumstances, weighed with careful judgment, will determine whether the obviousness of the error and the seriousness of the injustice done to the defendant thereby are so great the Law Court cannot in good conscience let the conviction stand." *Id.* at 469.

Applying that test to the entire record of the case at hand, we do not find obvious error. The hearsay evidence defendant now objects to, although not admissible as part of the State's direct case, clearly was admissible later to rebut the testimony of defense witness Nora Perreault. On the stand Perreault described a conversation with the victim some months after the alleged sexual assault in which the victim told her she did not know whether it was defendant or defendant's son, Keith, who had assaulted her. Perreault testified that "[the victim] at one point had said that it was really dark and she was scared and she wasn't sure who it was. Then she said that it was [defendant] and then she said that [defendant] had said it was Keith." In redirect examination Perreault was asked again if the victim had stated to her that she didn't know whether it was defendant or Keith and she answered affirmatively. The clear purpose of Perreault's testimony was to lead the jury to infer that the victim's trial testimony was recently fabricated, and thus after Perreault's testimony the victim's prior consistent statements became admissible "to rebut the charge against [her] of recent fabrication." M.R.Evid. 801(d)(1). In *State v. Galloway*, 247 A.2d 104, 106 (Me.1968), we reaffirmed the statement in *State v. King*, 123 Me. 256, 258, 122 A. 578, 579 (1923), that "where the prosecutrix has taken the stand and her testimony has been impeached, the details of her prior statement of what oc-

curred may be received in corroboration of her testimony given on the stand...." In the case at bar, although the prior consistent statements came in before Perreault's testimony raised the inference of recent fabrication and thus came in out of their proper order, the premature admission of those statements is not significant on a review for obvious error of the entire body of evidence that went to the jury. No serious injustice was done to defendant merely because of the error in an order of proof that met no opposition from defendant's experienced trial counsel.

In *State v. True*, 438 A.2d at 468, we said that "trial counsel's failure to object to ... inadmissible evidence, whether as a result of tactical decision or oversight, will itself be a consideration in determining whether the error is obvious and highly prejudicial." In this case, the challenged statements were not blurted out; the three statements came in from three different witnesses in response to questions from the State that clearly forewarned of the answers to follow. Defendant's failure to make any objection to the State's questions or to the answers given in response suggest that defense counsel could well have made a tactical decision not to object to the premature admission of the out-of-court statements. Defendant's trial counsel had listed Perreault on his pretrial witness list provided the State and may well have viewed it tactically better for defendant to avoid having the victim's prior consistent statements come in as the State's rebuttal immediately before jury deliberations.

We are confirmed in our confidence that there is no obvious error in the present case by the heavy weight of incriminating evidence, in addition to the victim's out-of-court statements. In addition to the victim's detailed testimony about the assault and its circumstances, defendant's own statements, made to Detective Madore during the investigation of the incident, were corroborative of the State's case. Detective Madore asked defendant if it were possible that his son, Keith, could have gone into the victim's bedroom, and defendant gave a sigh and said, "You're right, I never thought about that. That's entirely possible." Defendant went on to say, "It's not as serious for a juvenile, is it?" and told Detective Madore he could interview Keith at any time. The victim's testimony that defendant repeatedly asked her and her twin sister if they were virgins and if they kept their mouths shut and her testimony about defendant's request for oral sex was corroborated by the sister. The victim's testimony that defendant had given her alcohol and had told her to sleep upstairs and her two sisters to sleep in the basement was confirmed by defendant himself.

■ On appeal defendant also argues that even if the prior consistent statements were admissible the presiding justice committed reversible error by failing to instruct the jury that under M.R.Evid. 801(d)(1) those statements were admissible only to rebut the charge of recent fabrication and not to establish the truth of the matter asserted. At trial, however, defendant's trial counsel made no request at any time for any such limiting instruction, and on an "obvious error" review we cannot say that the court's failure to give the limiting instruction on its own initiative constitutes "a seriously prejudicial error tending to promote manifest injustice." The court committed no reversible error in admitting the victim's three prior consistent statements.

## II.

### Detective Madore's Opinion as to the Victim's Veracity

■ Defense trial counsel, in his opening remarks, stated to the jury that "there's never been a policeman yet who follows up a complaint that didn't start out believing that it was true." Under direct examination by the prosecutor, Detective Madore testified, "You always go into the case believing the victim unless it's proved otherwise; and I did believe [the victim], yes." Defendant argues that Detective Madore's testimony was an invasion of the jury's province to determine credibility and thus was improperly admitted. Although defendant made a general objection to the State's question to Detective Madore, he

did not state the specific ground of objection as required by M.R.Evid. 103(a)(1), and thus we review the admission of Madore's testimony under the obvious error standard. *See State v. McKenney*, 459 A.2d 1093 (Me.1983). In the circumstances of this case, Detective Madore's testimony did not result in any "manifest injustice." His testimony was his personal assessment of the victim's credibility at the time he was starting his investigation; it was not an assessment of her credibility at trial, a task that is within the exclusive province of the jury. Defense counsel apparently saw no prejudice to defendant in making the jury aware of Detective Madore's assessment of the victim's credibility at the time of the investigation since, when cross-examining the detective, counsel asked him, "Were you satisfied that the information you were getting [from the victim] was at least on its surface reliable and accurate." Furthermore, Madore's testimony merely confirmed defense counsel's theory, as presented to the jury in his opening statement, that a policeman embarking on the investigation of a complaint proceeds on the initial premise that the complaint is true.

### III.

*Changes in the Victim's Personality and Behavior*

■ Defendant contends finally that the victim's testimony that after the assault she could not sleep, had nightmares, and was rude and mean, together with her school principal's testimony of a change in her social behavior and academic performance at that time, was not relevant and should not have been admitted. It is for the trial court to determine the relevancy of evidence offered at trial; its determination is reviewable only for abuse of discretion. *See State v. Gagnon*, 383 A.2d 25, 31 (Me.1978). We find no abuse of discretion here. Evidence of changes in the victim's personality and behavior immediately after the time of the reported assault tends to prove that something of a traumatic nature had in fact occurred and thus was clearly relevant to the State's case.

The entry is:

Judgment affirmed.

All concurring.