**STATE of Maine**

v.

**Craig A. EATON.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 8, 1995.

Decided Dec. 12, 1995.

Michael E. Povich, Dist. Atty., Patricia Mador, Asst. Dist. Atty., Ellsworth, for the State.

Marshall T. Cary, Bangor, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

Craig Eaton appeals from judgments entered on jury verdicts in the Superior Court (Hancock County, *Kravchuk, J.*) finding him guilty of armed gross sexual assault, armed kidnapping, armed unlawful sexual contact, criminal threatening with a dangerous weapon, and reckless conduct with a dangerous weapon. Eaton raises four issues on appeal: 1) that the trial court admitted inadmissible evidence, 2) that the trial court abused its discretion by denying a request for a jury view of the crime site, 3) that statements made by counsel for the State during the trial and in closing argument and in rebuttal constitute prosecutorial misconduct resulting in manifest injustice, and 4) that the evidence at the trial was insufficient to convict him. We affirm the judgments.

On the evening of October 12, 1993, Craig Eaton bought beer at a Blue Hill store for two high school students on the condition that they accompany Eaton back to Eaton's trailer in Sedgwick to drink it. The young woman of the two did not drink and around 11:00 PM asked to go home. Eaton and the two students set out in Eaton's truck with the young man driving. They dropped the young woman at her home, but within minutes Eaton convinced the young man to call the young woman to get her to come back

out with them to "jack" deer. Around 2:00 AM, when the young woman asked again to go home, Eaton pointed a loaded rifle at the student driving and ordered him to drive to a remote area of Deer Isle, where Eaton, holding the young man at bay with the rifle, sexually assaulted the young woman. Eaton then ordered the young man to drive back to Sedgwick, where he released both victims, threatening to kill them and their families if they told anyone what had happened.

## I. Evidentiary Issues

### A. Admissibility of Evidence of Multiple Sexual Acts

■ Eaton first contends the trial court erred as a matter of law in admitting evidence of two separate alleged sexual acts in support of the single indictment count charging him with armed gross sexual assault. We review a trial court's decision of law *de novo*. *Bliss v. Bliss*, 583 A.2d 208, 210 (Me. 1990).

The indictment charged Eaton in Count I with using a firearm to compel the victim to submit to "a sexual act" in violation of Title 17–A M.R.S.A. § 253(1)(A) (1983 & Supp. 1994). After Eaton was released from custody on bail the State succeeded in having Eaton's bail revoked by establishing at a *Harnish* [1] hearing probable cause to believe Eaton had committed the formerly capital offense of rape, a sufficient ground for pretrial denial of bail. Eaton seeks to establish that "by adducing evidence of rape at the Harnish Bail Hearing the State had elected to establish at trial as the sexual act alleged in the Indictment genital to genital contact." He argues that evidence of any other sexual act must be excluded. We disagree.

■ If Eaton's argument is premised on an assumption that he is charged in Count I with only a single sexual act, so that the State must elect which sexual act it will prosecute him for his argument is fatally flawed in its initiation. We have held that a single offense may be made up of several separate acts if they "relate to the same transaction and together constitute one offense." *State v. Strollo*, 370 A.2d 675, 677

(Me.1977). *See also* M.R.Crim.P. 7(c). Evidence of separate unlawful sexual acts, each specified by statute as chargeable within the offense of gross sexual misconduct, may be admitted if the act occurred within the same offense charged against the defendant. *State v. Hebert*, 448 A.2d 322, 326 (Me.1982) makes clear that an indictment for gross sexual misconduct need not specify the form of behavior encompassed within the statutory definition of "a sexual act" with which the defendant is charged. Eaton, under indictment for having committed "a sexual act" in violation of statute, is placed in jeopardy of a conviction on the basis of any and all sexual acts described by the statute that the State may seek to prove occurred during his offense against the victim. He successfully could assert the defense of double jeopardy should the State attempt to prosecute him in later proceedings on the basis of evidence of another sexual act constituting gross sexual misconduct committed against the same victim in the same incident. Because the indictment does not limit the State to proving only a single sexual act for which it may bring evidence against Eaton on Count I, Eaton's argument fails at its first premise. The State is not required to "elect" one sexual act for which to offer evidence, and the State's "election" of rape as the basis for a preliminary proceeding is irrelevant.

■ If, in the alternative, Eaton seeks to establish the more sweeping assertion that evidence offered at a *Harnish* hearing independently limits evidence the State may offer at the trial despite the fact that the indictment allows for evidence of multiple sexual acts, his argument misconceives the role of a *Harnish* proceeding. Pursuant to Title 15 M.R.S.A. § 1027(3) (Supp.1994), to extinguish a defendant's right to bail the State must prove only that probable cause exists that the defendant committed a formerly capital offense, in this case rape. The *Harnish* hearing and the trial are separate proceedings. They have separate purposes and different burdens of proof on the State. The *Harnish* hearing addresses bail in the context of probable cause to believe a single

1. 15 M.R.S.A. § 1027 (Supp.1994).

crime has been committed. Trial requires proof beyond a reasonable doubt of all elements of alleged crimes. Evidence adduced by the State to establish probable cause at a *Harnish* hearing in no way limits the evidence that may be adduced by the State at the trial to prove the charges alleged in the indictment.

Because Count I of the indictment did not limit proof to only one sexual act, and because evidence offered at a *Harnish* hearing is independent of evidence offered at the trial, evidence of any sexual act described by the statute as gross sexual misconduct properly was admissible against Eaton at the trial.

### B. "Not Dissimilar" Hair Samples

■ Eaton next urges that the trial court erred in allowing an expert witness to testify that hairs of inconclusive origin found in Eaton's truck were "clearly not dissimilar" to the victim's. Eaton made no formal objection at the trial that the testimony was confusing or unfairly prejudicial. He repeatedly questioned the propriety of the testimony at sidebar, however, in light of the court's having granted his motion in limine pursuant to M.R.Evid. 403 [2] to exclude testimony on samples that did not match in all characteristics. His efforts sufficiently preserved the issue for review. *Sullivan v. Johnson,* 628 A.2d 653, 655 (Me.1993).

■ We review a court's determination to admit evidence challenged as unfairly prejudicial for an abuse of the court's discretion in weighing the probative value of the evidence against the risk of unfair prejudice. *State v. Giovanini,* 567 A.2d 1345, 1346 (Me. 1989). When the issue properly has been preserved at trial, as here, we vacate a court's erroneous determination to admit evidence only if that error does harm to a substantial right of the defendant's. M.R.Evid. 103(a); M.R.Crim.P. 52(a). Error is harmless if it is highly probable it did not

affect the judgment. *State v. Allen,* 462 A.2d 49, 52 (Me.1983).

■ The court in limine properly limited expert testimony as to hair sample comparisons, allowing samples to be described as "similar" only when all measurable characteristics matched. The court at trial thereafter exceeded its discretion in allowing testimony that certain hair samples were "not dissimilar" from the victim's. Such awkward double negative testimony could have misled jurors erroneously to conclude that the hairs found in the truck were the victim's, when in fact the testimony technically meant only that the hair match was inconclusive. The possibility of confusion from this testimony outweighs whatever probative value a hair sample match might provide.

■ The court's error in admitting the confusing "not dissimilar" testimony, however, is harmless. No substantial right of Eaton's was affected. The other evidence is sufficient to sustain Eaton's guilt beyond a reasonable doubt. It is highly probable the testimony on hair samples did not affect the judgment. The court's error therefore is not reversible error.

### C. Detective's Hearsay Testimony

Eaton contends that the following testimony by a Maine State Police detective constitutes inadmissible hearsay.

> STATE: And did [male victim] speak with you?
> WITNESS: Yes, he did.
> *STATE: And he, in essence, told you briefly what he testified to in court?*
> *WITNESS: Yes.*

■ The trial court's decision to admit alleged hearsay is a question of law. We review conclusions of law *de novo. Bliss v. Bliss,* 583 A.2d at 210. When evidence was not objected to at the trial, as here, we review for obvious error affecting the defendant's substantial rights. M.R.Crim.P. 52(b).[3] Obvious error exists only when the

---

**2.** M.R.Evid. 403 provides:
   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,

or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**3.** M.R.Crim.P. 52(b) provides:

error complained of is so highly prejudicial and so taints the proceedings as virtually to deprive the defendant of a fair trial. *State v. Magoon*, 649 A.2d 1115, 1117 (Me.1994) (citing *State v. True*, 438 A.2d 460, 468–69 (Me. 1981)).

■ Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted in the out of court statement. M.R.Evid. 801(c). Whatever the purpose of the State's question, it was asked in a manner that elicited a hearsay response. If the State simply wanted to establish that the male victim had made a complaint against the defendant, it could have asked a simple leading question: "And he made a complaint against Craig Eaton?" Instead, the State posed a leading question inviting the incorporation of a detailed out-of-court statement in the answer: "And he, in essence, told you briefly what he testified to in court?" The detective's affirmative response to that question, regardless of its purpose, had the effect of telling the jury that everything that the male victim said in court was consistent with what he told the detective out of court. The detective thus offered a prior consistent statement of the male victim in violation of M.R.Evid.P. 801(d)(1). The detective's testimony was hearsay.

■ The unchallenged admission of the trooper's statement as to the victim's complaint was not, however, obvious error. Other direct evidence independently corroborated the truth of the complaint to the officer. The effect of the State's question concerning that complaint cannot be held to have so tainted the proceedings as virtually to deprive Eaton of a fair trial.

## II. Site View

■ Eaton next urges that the court erred in refusing his request for a jury view of the crime site. The trial court has discretion to order a jury view pursuant to Title 15 M.R.S.A. § 1260 (1980). We review the court's decision to deny a jury view for an abuse of discretion. *State v. Heald*, 333 A.2d 696, 700 (Me.1975).

The purpose of a jury view is to allow the jury to "more intelligently apply and comprehend the testimony presented in court." *State v. Heald*, 333 A.2d at 700.

Balanced against the interest in giving the jury all reasonable and necessary assistance in understanding and appreciating the significance of the evidence presented in the courtroom must be the fact of trial delay and the potential disruption of proper trial procedure entailed in possible exposure of the jury to irrelevant and prejudicial information and influence.

*Id.*

■ The court here authorized aerial photographs of the site at the expense of the State. The State also provided Eaton four additional site photographs. Distances and locations of houses, roads, wharfs, and the shoreline could be measured and described in testimony. A jury visit to the scene could not duplicate the 3:00 AM conditions of the crime. In these circumstances the court's decision that the benefits of a site viewing would not outweigh the expense and delay caused by a 110–mile round trip for the jury and court officers did not exceed the court's discretion.

## III. Prosecutorial Misconduct

Eaton urges that six statements made by the State during the course of the trial and at closing and rebuttal constitute prosecutorial misconduct of sufficient degree to require vacating his conviction. We disagree.

■ The defendant raised no objection at the trial to these six statements. We vacate a conviction on the ground of prosecutorial misconduct when there has been no objection at trial only when 1) prosecution conduct was improper and 2) such improper conduct constituted obvious error pursuant to M.R.Crim.P. 52(b). *State v. Marshall*, 628 A.2d 1061 (Me.1993). Error is obvious only when it is so highly prejudicial and so taints the proceedings as virtually to deprive the

(b) *Obvious Error. Obvious errors or defects affecting substantial rights may be noticed al-* though they were not brought to the attention of the court.

defendant of a fair trial. *State v. Magoon,* 649 A.2d 1115, 1117 (Me.1994).

Although the instances of alleged prosecutorial misconduct are close to the line, they do not rise to the level of virtually depriving Eaton of a fair trial. They do not constitute obvious error.

### IV. Sufficiency of the Evidence

Eaton made a motion for acquittal at the close of the State's case in chief and again at the close of all the evidence. M.R.Crim.P. 29(a). The court denied both motions. Eaton contends that the evidence presented was insufficient to sustain his conviction and that his motion for acquittal therefore improperly was denied.

■ The weight and significance accorded the evidence and the evaluation of witness credibility are the exclusive province of the jury. *State v. Lee,* 583 A.2d 212, 214 (Me. 1990).

Viewed in the light most favorable to the State, the evidence is sufficient to establish beyond a reasonable doubt that the defendant in violation of Title 17–A M.R.S.A. §§ 253, 301, 255, 209 & 211 (1983 & Supp. 1994) committed armed gross sexual assault, armed kidnapping, armed unlawful sexual contact, criminal threatening with the use of a dangerous weapon, and reckless conduct with the use of a dangerous weapon.

The entry is:

Judgments affirmed.

All concurring.