2000 ME 144

**STATE of Maine**

v.

**Cary YOUNG.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 27, 2000.

Decided July 25, 2000.

David W. Crook, District Attorney, Alan P. Kelley, Deputy Dist. Atty, Augusta, for State.

Walter F. McKee, Esq., Lipman & Katz, P.A., Augusta, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

DANA, J.

[¶ 1] Cary Young appeals from the judgment entered by the Superior Court (Kennebec County, *Studstrup, J.*) on a jury verdict finding him guilty of gross sexual misconduct in violation of 17–A M.R.S.A. § 253 (1988),[1] *repealed and replaced by* P.L. 1989, ch. 401. Young argues on appeal that he was denied a fair trial by virtue of comments made by the prosecutor during the State's closing arguments and that the trial court should have ordered a mistrial. Because it was not obvi-

---

1. Section 253 at the time in question provided in relevant part:

   **§ 253. Gross sexual misconduct**

   A person is guilty of gross sexual misconduct

   1. If he engages in a sexual act with another person and:

   . . . .

   **B.** The other person, not his spouse, has not in fact attained his 14th birthday. 17–A M.R.S.A. § 253 (1988), *repealed and replaced by* P.L. 1989, ch. 401.

ous error for the trial court to fail to order a mistrial on its own initiative, we affirm.

[¶ 2] Young was charged with one count of gross sexual misconduct following revelations by his niece that he had molested her when she was between the ages of five and seven years old. At trial, the victim testified about the first time that Young had sexual contact with her and stated that he would make similar contact with her almost every time he would baby-sit her. She also testified about the last contact of this nature which occurred in the latter half of 1988 and which formed the basis of the charge against him.

[¶ 3] The victim's mother testified about a confrontation she had with Young, her brother, after she learned of the abuse. According to the mother, Young admitted to the abuse by nodding his head "yes" when asked whether he had done the things the victim had described.[2] This testimony was contradicted by the testimony of the victim's grandfather who was also present during the confrontation.

[¶ 4] Following the presentation of evidence, both the State and Young made their closing arguments. In the course of his closing argument and rebuttal argument, the prosecutor made several comments to which Young objected. Each time, the court sustained Young's objection and in one instance issued a curative instruction immediately following the objectionable comment. The court also admonished the prosecutor *sua sponte* on one occasion. Following both closing arguments, the court issued its jury instructions in which it specifically reminded the jury that the closing arguments were not evidence in the case and instructed the jury to disregard all expressions of personal opinion by either counsel regarding the quality of the testimony presented. Young did not move for a mistrial at any time prior to the jury reaching its verdict. The jury returned a verdict of guilty and Young now appeals to this Court.

[¶ 5] Because Young failed to move for a mistrial prior to the jury returning its verdict, we review for obvious error. *See State v. Rose,* 622 A.2d 78, 79 (Me.1993). "Error is obvious only when it is so highly prejudicial and so taints the proceedings as virtually to deprive the defendant of a fair trial." *State v. Eaton,* 669 A.2d 146, 150–51 (Me.1995) (stating that, although six prosecutorial statements were "close to the line," they did not rise to the level of depriving the defendant of a fair trial).

[¶ 6] As we have noted previously, prosecutors are held to a higher standard regarding their conduct during trial because they represent the State, *see State v. Ashley,* 666 A.2d 103, 105 (Me.1995), and because they have an obligation to ensure that justice is done, as opposed to merely ensuring that a conviction is secured, *see State v. Wallace,* 1997 ME 51, ¶ 5, 691 A.2d 1195, 1197. When analyzing alleged prosecutorial misconduct, we view the comments of the prosecutor as a whole, *see State v. Weisbrode,* 653 A.2d 411, 416 (Me. 1995), and look at the incidents of misconduct both in isolation and in the aggregate, *see State v. Risio,* 388 A.2d 896, 901 (Me. 1978); *see also United States v. Hernandez,* 865 F.2d 925, 930 (7th Cir.1989) (viewing prosecutor's alleged improper arguments individually and in the aggregate); *Mills v. United States,* 599 A.2d 775, 786 (D.C.1991) (examining prosecutor's comments both standing alone and in the aggregate).

[¶ 7] Doing so in this case, and taking into consideration the ameliorative steps taken by the court, leads us to the conclusion that the trial court did not commit obvious error by failing to declare a mistrial *sua sponte. Cf.* Robert W. Clifford, *Identifying and Preventing Improper Prosecutorial Comment in Closing,* 51 ME. L. REV. 241, 244 & 257–67 (1999) (noting the crucial role of the trial court as a check to prosecutorial excesses, it being

---

**2.** Young is deaf and had developed a system of communication with his family.

in the best position to assess the "feel" of the trial and to take the necessary corrective action when misconduct occurs to undo the prejudice). We cannot say that the comments, even viewed in the aggregate, were so highly prejudicial or that the court's ameliorative steps were so ineffective as to deny Young a fair trial and as to necessitate a declaration of a mistrial by the trial court on its own initiative. Nor does it appear from the record that the comments made by the prosecutor reflect bad faith on his part. *See State v. Bennett,* 658 A.2d 1058, 1063 (Me.1995) (noting that only where there are exceptionally prejudicial circumstances or prosecutorial bad faith will curative instructions be deemed inadequate to cure the prejudice).

The entry is:

Judgment affirmed.