STATE OF MAINE
PENOBSCOT, ss.

FILED AND ENTERED
SUPERIOR COURT

OCT 31 2001

PENOBSCOT COUNTY

SUPERIOR COURT
Criminal Action No. 99-717
AMM-PEN-10/31/2001

EDWARD WILLIAMS,
   Petitioner

v.

STATE OF MAINE,
   Respondent

)
)
)
)
)
)

## DECISION AND ORDER
## ON PETITION FOR
## POST-CONVICTION RELIEF

  The petitioner, Edward Williams ("Williams"), moves this court for post-conviction relief on the ground that his trial counsel was ineffective by failing to object properly to statements made by the State in its rebuttal argument. For the following reasons, Williams's Petition for Post-Conviction Relief is denied.

## BACKGROUND

  The facts developed at trial may be summarized as follows. Williams and Eric Heath ("Heath") were long-time rivals. In the few weeks prior to October 3, 1996, Heath repeatedly made threatening phone calls to Williams and his mother at their home. On October 3, 1996, Heath telephoned Williams and challenged him to a fight. Williams acquiesced and drove to Heath's home. Heath met Williams outside, but when he realized Williams was carrying a knife, Heath ran into his home. At that point, Williams turned around and started walking back toward his car. Moments later, Heath returned and rushed towards Williams while swinging a broomstick. During the ensuing brawl, Williams stabbed Heath.

  The State prosecuted Williams for murder, and Williams claimed self-defense and entered evidence demonstrating the tumultuous past between Heath and Williams. He argued at trial that his encounter with Heath was actually two separate encounters, the confrontation before Heath ran inside and that which occurred when he came back out. Under this theory, Williams had no fault when Heath ran after him with the broomstick, and had no choice but to defend himself. After a four-day trial, the jury found Williams guilty of manslaughter, and on May 27, 1998, the trial court (Pierson, J.) sentenced him to 18 years, with all but 11 years suspended, and 6 years probation.

Williams appealed this conviction to the Law Court on several grounds, including the impropriety of several statements made by the prosecutor, William Stokes ("Stokes"), during rebuttal argument. In a decision dated July 19, 1999, the Law Court held that:

> [b]ecause Williams failed to request a curative instruction and move for a mistrial as to those comments by the prosecutor to which he objected during closing argument, and failed to object at all to prosecutorial comments that on appeal he contends were improper, we review those comments for obvious error and find none.

State v. Williams, No. 99-103 (Me. July 19, 1999) (mem.).

On October 7, 1999, Williams filed a Petition for Post-Conviction Review in the Superior Court, in which he argues that his trial counsel, Jeffrey Silverstein ("Silverstein"), did not provide effective assistance of counsel by failing to object properly to inappropriate statements made by Stokes during rebuttal argument.[1]

---

1. Stokes's entire rebuttal argument was as follows:

I'm going to address that point, because look at what the law really says. And you know what Mr. Silverstein told you -- he never -- he told you all about Diane Dall, best witness. That's what he told you. But what did he -- what did he not tell you? What did Diane Dall hear Eddie Williams say, as he reached into his pocket? I'll f'n kill you. That's what she heard. And then Mr. Silverstein stood up and said Eddie Williams never threatened to do anything. He didn't have any intent to cause physical harm.

Well, what do you think it takes to intend to cause physical harm to somebody, when you're within four feet of them, and you reach in and clearly show them a knife and say you're going to kill them.

Now, look at this. With the intent to cause physical harm he provokes such other person to use unlawful deadly force. Eric Heath shouldn't have gone back. I told you that in my closing. He shouldn't have gone back. His use of deadly force was unlawful. That's the whole point, ladies and gentlemen, of the law of self-defense and the law that we live under in a civilized society. You can't claim self-defense if you have actually provoked another person to use unlawful deadly force, and then you say, well, I was just defending myself from deadly force -- that you have provoked.

Now, what Mr. Silverstein wants you to do is to isolate this event and take it totally out of context. And Mr. Williams says, well, I threatened him, went in, grabbed for the knife. Darlene Dall never saw the knife. Tina Fogg Branscomb saw it. Eric Allen saw it. But because Diane Dall didn't see it, he didn't pull it out. But yet nobody actually saw the knife at all when the stabbing occurred, but somehow the knife got out there and got into Mr. Heath. People may not see things, and yet clearly Mr. Heath was

aware that he'd just been threatened with a knife; that he'd been told he was going to get killed.

Now, what they want you to do is to say, well, when Williams did that, it's over. Oh, it's over? He can go, reach for a knife, threaten to kill a man, and, remember, all of this in a situation where it's fight [sic]. It's a fight. He didn't have to go there in the first place. And then he said, well, it's over. He gets to decide it's over. I can introduce deadly force into this, and now it's over. You can't come back. It's not my fault that he went and ran away and got the broom stick.

That's exactly what this is talking about, ladies and gentlemen. If Eric Heath had gone out and killed Edward Williams, we'd be trying Eric Heath for murder. They were both wrong, both of them. And two wrongs don't make a right.

Now, the theory here is that somehow Edward Williams could decide that the police weren't going to do anything; that, well, what are the police gonna do? Well, the police never had a chance to do anything. But what he's saying is, because I don't really think the police are going to do what I want them to do, I'm not going to give them a chance to do anything; and then what I will do is become a law unto myself. I will decide that I will go out and join in a deadly confrontation, and that's okay. We can call that self-defense.

*Well, you know, 150 years ago, that's how people resolved their disputes. They went out, and they paced off so many paces, and they had a duel or they had gun fights in the street, and that was accepted society [sic] because there was no law enforcement presence. And that's what this country was founded upon is that we have evolved into a society where we do not resolve these disputes like that. We don't turn it over to a person and say, you may decide to create a deadly confrontation, then claim self-defense. Self-defense really has to be that you are defending yourself, not that you have chosen to engage in combat by agreement and then claim, well, you know, he came at me with a stick after I pulled a knife on him and call it self- defense.*

*You're not allowed to do that, ladies and gentlemen, because society would literally break down if every time we were offended or threatened we went out and went across town and could deal and resolve our problems with physical violence. We're going backwards as a society, we're becoming less civilized if that's true. And it's not true.*

Eddie Williams had the choices. Eric Heath was wrong. He should have been held accountable. But, you know, Eric Heath may have done a lot of things in his young life, but remember, all the events that we're talking about that happened prior to October 3rd happened eight years prior to that when he was 15 years old. And what happened? He goes, he wants to fight Eddie Williams, Eddie Williams doesn't want to fight, and he leaves. They never do come to blows. And eight years go by until the phone calls start. And Eric Heath may have done things wrong, ladies and gentlemen, but let's not ever get to the point where we can say about someone he's garbage, he's disposable, he's no good, so it's okay to kill him.

The law applied to Eric Heath. That's true. And he did wrong. But the law applies to Eddie Williams, too. It applies to all of us. And Eddie Williams did wrong, and he

3

## DISCUSSION

"[A] claim of ineffective assistance of counsel . . . must be raised by post-conviction review."[2] State v. Donovan, 1997 ME 181, ¶ 12, 698 A.2d 1045, 1049.

must be held accountable for that, not because he's a bad person but because he violated the law.

*And, finally, ladies and gentlemen, let me just talk for one brief moment. You've heard a lot of us talking. Let's talk about a little bit about sympathy for his family, for his mother, for the family of Eric Heath, who have lost a 23-year-old. You can't sit here and not feel sympathy, and it's okay to feel sympathy. It just has no place in that jury room. And you know why? Because once you start to make decisions on the basis of emotion, or feeling, or sympathy, why stop there? Why not make your decision on the basis of a person's skin color, or religion, or national origin, or sex, or because you're just in a bad mood. You see, ladies and gentlemen, once you start to make your decisions on the basis of how you feel, your decisions don't mean anything anymore. And once your decisions don't mean anything -- because you are the jury, you are the conscience of the community, once your decisions don't mean anything, then we're all in trouble because we can't rely upon what the law is, and we don't know when we are going to be held responsible and when we're not.*

So we all feel sympathy. None of us want to be here. but you have to make your decision based on the facts and on the law. And when you do that, Edward Williams committed a crime, and he must be held responsible for that. Thank you.

At that point, the court allowed the jury to take a brief recess. Once the jury left the room, Silverstein voiced an objection:

Mr. Silverstein: Your Honor, may I have a moment on the record?

The Court: Yes. Want to be heard on the record?

Mr. Silverstein: Yes. I just would like to lodge an objection at this time and --- to a couple of remarks made by Mr. Stokes in his rebuttal insofar as I believe he caused -- to personalize the matter to the jury and placed fear personally upon them by virtue of statements that we'd be retreating backwards towards an uncivilized society and by virtue of the statements that their decision would be meaningless if they reacted in essentially a manner inconsistent with what he suggests.

The Court: Your objections are so noted.

Mr. Silverstein: Thank you.
(Emphasis supplied).

2. Williams's claim is one sounding in the deprivation of the Sixth Amendment right to effective assistance of counsel, not of the Fifth Amendment right to due process that would be impinged upon by prosecutorial misconduct. In other words, it is not the alleged misconduct itself that bolsters the defendant's contention, but rather the failure of his attorney to react appropriately to it.

4

A trial counsel's performance is ineffective "when (1) the attorney's performance is below that of an ordinary fallible attorney and (2) that substandard performance deprives the defendant of a substantial defense." Pottios v. State, 1997 ME 234, ¶ 9, 704 A.2d 1221, 1223. The petitioner must affirmatively show both points. Vaughn v. State, 634 A.2d 449, 450 (Me. 1993).

The court must ask whether Stokes's remarks were improper before it can determine whether Silverstein's failure to request curative instructions or to move for a mistrial was substandard. Williams alleges that Stokes made two inappropriate statements during his rebuttal argument. First, Stokes commented:

> Well, you know, 150 years ago, that's how people resolved their disputes. They went out, and they paced off so many paces, and they had a duel or they had gun fights in the street, and that was accepted society [sic] because there was no law enforcement presence. And that's what this country was founded upon is that we have evolved into a society where we do not resolve these disputes like that. We don't turn it over to a person and say, you may decide to create a deadly confrontation, then claim self-defense. Self-defense really h a s to be that you are defending yourself, not that you have chosen to engage in combat by agreement and then claim, well, you know, he came at me with a stick after I pulled a knife on him and call it self-defense.
>
> You're not allowed to do that, ladies and gentlemen, because *society would literally break down* if every time we were offended or threatened we went out and went across town and could deal and resolve our problems with physical violence. *We're going backwards as a society, we're becoming less civilized* if that's true. And it's not true.[3] (Emphasis added).

Second, Stokes stated at a later point in the argument:

> And, finally, ladies and gentlemen, let me just talk for one brief

---

Accordingly, the framework for evaluating this claim is delineated in the line of cases following Strickland v. Washington, 466 U.S. 668 (1984), and Lang v. Murch, 438 A.2d 914 (Me. 1981). See State v. Brewer, 1997 ME 177, ¶ 15, 699 A.2d 1139, 1144 (the test announced in Strickland is virtually identical to the test the Law Court established in Lang).

3. For Stokes's entire rebuttal argument, see n.1.

5

moment. You've heard a lot of us talking. Let's talk about a little bit about sympathy because you can't sit in this trial and not feel sympathy for Eddie Williams, for his family, for his mother, for the family of Eric Heath, who have lost a 23-year-old. You can't sit here and not feel sympathy, and it's okay to feel sympathy. It just has no place in that jury room. And you know why? Because once you start to make decisions on the basis of emotion, or feeling, or sympathy, why stop there? Why not make your decision on the basis of a person's skin color, or religion, or national origin, or sex, or because you're just in a bad mood. You see, ladies and gentlemen, once you start to make your decisions on the basis of how you feel, *your decisions don't mean anything anymore.* And once your decisions don't mean anything -- *because you are* the jury, you are *the conscience of the community, once your decisions don't mean anything, then we're all in trouble* because we can't rely upon what the law is, and we don't know when we are going to be held responsible and when we're not. (Emphasis added).

Williams argues that by making the first statement, Stokes personalized his argument to the jury and directly challenged them by suggesting that if they failed to convict, "society would literally break down," and that "we're going backwards as a society, we're becoming less civilized. . . ." These statements, Williams contends,

> likened the matter to the wild, wild, west, where settling disputes was done without law enforcement, [and] invited the Jury to become more than fact finders. [Stokes] asked them to be the guardians of justice and to apply a harsher standard to Williams'[s] conduct. This clearly prejudiced Williams and affected the Jury[] verdict.

Stokes's first statement was a direct response to Williams's closing argument, in which Silverstein discussed the defense's self-defense theory. While a prosecutor may not disparage the legal principles upon which the defense is based, he may attack the sufficiency of defense evidence. State v. McDonald, 472 A.2d 424, 425-426 (Me. 1984). Here, Stokes did not attack the legal principles of Williams's self-defense argument, he attacked the sufficiency of the evidence supporting the argument. In doing so, he likened the matter to a duel to illustrate the point that Williams was not acting in self-defense because he voluntarily went to Heath's

6

carrying a knife, knowing that Heath wanted to fight him, and that his use of deadly weapons instigated Heath's use of the broomstick. See State v. Weisbrode, 653 A.2d 411, 416 (Me. 1995) (a prosecutor is free to use wit, satire, invective and imaginative illustration in arguing the State's case).

Williams's argument that Stokes personalized the matter to the jury and instilled a fear to acquit because society would break down, has no basis in fact. Taking Stokes's comments in context, see State v. Young, 2000 ME 144, ¶ 6, 755 A.2d 547, 548 (when analyzing alleged prosecutorial misconduct, we view the comments of the prosecutor as a whole, and look at the incident of misconduct both in isolation and in the aggregate), the jury could not reasonably infer that if they failed to convict, society would become less civilized or would break down. There is no evidence that any member of the jury drew such an inference; even though Stokes asked the jury to convict Williams of murder, it convicted him of the lesser crime of manslaughter.

Williams also argues that Stokes injected fear into the jury's deliberations by telling them that "[their] decisions don't mean anything anymore. And . . . because [they] are . . . the conscience of the community, once [their] decisions don't mean anything, then we're all in trouble. . . ." These statements, Williams suggests, made the jury apprehensive of an acquittal.

In making closing arguments, the prosecutor "may talk about the duties of the jury . . . ." United States v. Cotter, 425 F.2d 450, 452 (1st Cir. 1970). In making the second statement, Stokes ventured to educate the jury members about their proper role in assessing the evidence by reminding them that any sympathy they may feel has no place in the jury room and that it is their civic duty to make, as he stated later in the argument, their "decision based on the facts and on the law." He asked the jury to rely on deliberative reason, not passion, and was impressing upon them the importance of what they were about to do. This was a valid argument.[4]

_____

4. Williams argues that this case is akin to State v. Bennett, 658 A.2d 1058, 1063 (Me. 1995), wherein the prosecutor argued:

As a consequence, in delivering his rebuttal, Stokes remained within permissible limits. He refrained from argument "which would divert the jury from its duty to decide the case on the evidence," which "inject[ed] issues broader than the guilt or innocence of [Williams] under the prevailing law," which "prejudicial[ly] misstate[d] the law," or which "demean[ed] legitimate defenses available under the law." See State v. Hinds, 485 A.2d 231, 237 (Me. 1984). Further, neither of Stokes's comments shifted the burden or were inflammatory. Stokes's comments were entirely proper. Consequently, the court need not address any further issues.

The docket entry is:

Edward Williams's Petition for Post-Conviction is denied.

0ﾑ.31,2001

Andrew M. Mead
Justice, Superior Court

---

in this case has brought you face-to-face with murder and with murderers who are within your midst. Fortunately, the sterility, the formality, the security of the courtroom protects you.

* * *

Crimes are no more than a society's moral judgment about what is acceptable or unacceptable behavior. If this is your idea of no crime, of acceptable behavior, then I can say only to you we are in tough shape.

The Court held that by making this statement, the State encouraged the jurors to consider community sentiment in deliberating on the verdicts in the highly-publicized case.

Williams's case is distinguishable. Stokes did not ask the jury to consider public sentiment in reaching its verdict. Unlike the prosecutor in Bennett, he said nothing to evoke feelings of fear, concern, or shame in individual jurors. Stokes's first comment focused on the issue of self-defense and the sufficiency of the evidence in support thereof. The purpose of his second comment was to stress the importance of the jury relying only on the facts and the law in reaching its verdict.

ATTORNEYS ON POST CONVICTION REVIEW

WILLIAM STOKES ASST A.G.
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA   ME   04333


JEFFREY TOOTHAKER ESQ
14 HIGH STREET
ELLSWORTH   ME   04605