2008 ME 136

**STATE of Maine**

v.

**Steven M. CLARK.**

Supreme Judicial Court of Maine.

Argued: May 15, 2008.
Decided: Aug. 28, 2008.

Joel Vincent, Esq. (orally), Vincent, Kantz & Ruffner, Portland, ME, for Steven M. Clark.

G. Steven Rowe, Atty. Gen., Donald W. Macomber, Asst. Atty. Gen. (orally), Lisa J. Marchese, Asst. Atty. Gen., Augusta, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

GORMAN, J.

[¶ 1] Steven M. Clark appeals from a judgment of conviction of one count of murder, 17–A M.R.S. § 201(1)(A) (2007), entered in the Superior Court (Cumberland County, *Crowley, J.*) following a six-day jury trial. Clark argues that: (1) the State's attorney committed multiple instances of prosecutorial misconduct amounting to reversible error; (2) the court abused its discretion when it exclud-

ed a photograph of Clark, depicting him handcuffed and sprayed with mace during an arrest occurring approximately sixteen months before the events giving rise to his murder conviction; and (3) the evidence was insufficient to support his murder conviction.[1] We affirm the judgment.

[¶ 2] This case stems from the killing of Robert Wagner by Steven Clark. Because Clark admitted at trial that he had killed Wagner, the issue determined at trial was whether or not he killed Wagner in self-defense.

[¶ 3] On February 14, 2006, Clark spent the night drinking with Wagner and another friend. When the bar closed, the three ended up at Clark's house in Portland. At Clark's house, Clark and Wagner, who had a history of conflict with each other, began to argue. As the argument continued, the third friend left.

[¶ 4] Sometime after the friend's departure, Clark shot Wagner twice, killing him. Thereafter, Clark took extensive measures to conceal all evidence of the killing: he convinced his father and brother to assist him in transporting and burying Wagner's body in the woods behind Clark's father's home; he burned Wagner's clothes; he burned the clothes he wore when he shot and buried Wagner; he burned other items for fear they might contain DNA or other physical evidence; he repeatedly cleaned the crime scene with chemicals in an attempt to destroy evidence of the shooting; he drove to New Hampshire to use Wagner's ATM card; he provided false information to friends and investigators; and he solicited others to provide false reports of having sighted Wagner, in order to make it appear as though Wagner were still alive. Hours after the incident Clark confided in his brother and father that he had killed Wagner, but Clark never claimed to them that he had done so in self-defense, and in fact, told them a wholly different version of how the shooting occurred.

[¶ 5] At trial, Clark testified that he had tried to create the impression that he had not killed Wagner because, based on a previous interaction with members of the Portland Police Department, he feared his assertions of self-defense would not be accepted. Clark's explanation was rejected by the jury after three hours of deliberation.

## I. PROSECUTORIAL MISCONDUCT

[¶ 6] Clark alleges that the prosecutor in this case committed the following instances of misconduct, and that, individually or cumulatively, these instances were so prejudicial as to deny him due process and deprive him of a fair trial: (1) nine instances in which the prosecutor made comments designed to use Clark's post-arrest, post-*Miranda* silence to impeach his credibility; (2) eleven instances in which she expressed a personal opinion as to Clark's guilt or credibility; (3) three instances in which she unfairly and improperly diminished the credibility of defense counsel or of Clark's defense by attacking the integrity of defense counsel; and (4) one instance in which she violated the court's ruling on a motion in limine by eliciting testimonial evidence of Clark's drug use.

[¶ 7] When examining instances of alleged prosecutorial misconduct, we first determine whether the misconduct oc-

---

1. Clark also argues that the State violated M.R. Evid. 403 and 404 when it elicited allegedly highly prejudicial testimony that Clark was a member or leader of a gang called the "Irish Boyz." Because Clark did not object at trial, we review the prosecutor's comments to determine if they were improper and constituted obvious error. *State v. Eaton,* 669 A.2d 146, 150–51 (Me.1995). We find neither impropriety nor error.

curred and, if it did, view "the comments of the prosecutor as a whole," looking "at the incidents of misconduct both in isolation and in the aggregate." *State v. Young*, 2000 ME 144, ¶ 6, 755 A.2d 547, 548. When the defense objects to prosecution statements at trial, we review the alleged prosecutorial misconduct for harmless error, pursuant to M.R.Crim. P. 52(a), and do not vacate a judgment if it is "highly probable that the jury's determination of guilt was unaffected by the prosecutor's comments." *State v. Pelletier*, 673 A.2d 1327, 1330 (Me.1996). When the defense does not object at trial to the prosecutor's comments, we vacate the judgment on the ground of prosecutorial misconduct only if we determine that the prosecution's conduct was improper and that the improper conduct constitutes obvious error pursuant to M.R.Crim. P. 52(b). *See id.*; *State v. Eaton*, 669 A.2d 146, 150 (Me. 1995). "Trial counsel's failure to object to the inadmissible evidence, whether as a result of tactical decision or oversight, will itself be a consideration in determining whether the error is obvious and highly prejudicial." *State v. True*, 438 A.2d 460, 468 (Me.1981).

### A. Comments Concerning Post-*Miranda* Silence

[¶ 8] Clark alleges that, during her cross-examination of him, the prosecutor made six improper comments concerning his post-arrest decision to remain silent. Review of the transcript demonstrates that Clark objected to only two of those comments during the trial. In responding to the defendant's objection to one of the statements, the prosecutor offered to "confine [her] questions to during the course of this investigation," and the court agreed. Clark asked for no further action by the court. The second instance involved the following colloquy between Clark and the prosecutor:

Q. You offered to pay money to somebody at [the bar] if they came forward to talk about seeing Rob.

A. If they were questioned and she said that she saw Rob, yes, ma'am.

Q. Yes. And then—and then you tell [a detective], don't you: Go check out this woman at [the bar], she saw Rob. So you're hoping they go find this woman and that this woman covers your butt.

A. Yes, ma'am.

Q. All right. And then you say to [the detective]: Thank you, Lord, thank you, Jesus, he is alive?

A. Yeah.

Q. Doing your very best to mislead [the detective].

A. (Nods in the affirmative.)

Q. You said on your direct examination with regard to what you told your father and your brother, I would—I thought I would say whatever I needed to have my father help me.

A. Yes.

Q. You say whatever you need to get out of whatever bind you're in; don't you?

A. No, ma'am.

Q. Why? Because today you suddenly are seeing the truth, today, a year later?

A. When I was taken to the police station, ma'am, I was advised by [my initial lawyer]—I wanted to tell them then—I was advised by [my initial lawyer] and then Mr. Vincent not to say anything, to remain silent.

Q. So it is their fault?

A. No, ma'am.

Q. It is their fault that you lied all of that time and that somehow we are hearing about this for the first time?

Clark's timely objection to this question was sustained by the trial court.

[¶ 9] Clark asserts that, in the testimony quoted above and in the instance outlined, the prosecutor alluded to Clark's post-arrest, post-*Miranda* silence during cross-examination, thereby implicating the prohibition against discussing an accused's right to remain silent. *See Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) (holding that the use of the defendant's silence, at the time of arrest and after receiving *Miranda* warnings, for impeachment purposes violates the Due Process Clause of the Fourteenth Amendment). As noted, however, Clark objected to both statements, and the court correctly sustained both objections. Again, Clark never requested a curative instruction or a mistrial. In both instances, where there were no requests for curative instructions, the trial court's actions were appropriate responses to the questioning and, therefore, there was no error.

[¶ 10] With respect to the four other comments made during cross-examination that allegedly concerned Clark's post-arrest silence, but to which the defense did not object, because the prosecutor's comments did not rise to the level of being improper, there is also no error. *See Pelletier,* 673 A.2d at 1330.

**B. Prosecutor's Comments on Defendant's Guilt or Credibility**

 [¶ 11] Clark alleges that the prosecutor made eleven comments during her closing argument or her rebuttal to his closing argument that were improper

statements of her personal opinion. Not all references to the credibility of a defendant are improper and, in this case, seven of the challenged statements were fair comments on the evidence presented. In four instances, however, the prosecutor argued that Clark lied to the jury, in the courtroom, during his testimony.[2]

 [¶ 12] Because Clark made no objection to any of the statements at the time they were made, we review Clark's current claims of prosecutorial misconduct for obvious error. M.R.Crim. P. 52(b); *see id.* "Error is obvious only when it is so highly prejudicial and so taints the proceedings as virtually to deprive the defendant of a fair trial." *Id.* "The obvious error test requires the reviewing court to apply its best judgment to the entire record of the case to determine whether unobjected-to" instances of prosecutorial misconduct created, "in [their] probable effect upon the jury[,] a seriously prejudicial error tending to produce manifest injustice." *See State v. Dube,* 598 A.2d 742, 744 (Me.1991); *State v. Borucki,* 505 A.2d 89, 94 (Me.1986) (quotation marks omitted). "The particular circumstances, weighed with careful judgment, will determine whether the obviousness of the error and the seriousness of the injustice done to the defendant thereby are so great the Law Court cannot in good conscience let the conviction stand." *Dube,* 598 A.2d at 744 (quotation marks omitted).

[¶ 13] When viewed in the context of the record in this case, the comments of the prosecutor were not so highly prejudi-

---

**2.** *See State v. Steen,* 623 A.2d 146, 149 (Me. 1993) ("Although it is proper for the State to point out inconsistencies in a defendant's statement, ... it is impermissible for a prosecutor to assert that the defendant lied on the stand."); *cf. State v. Pendexter,* 495 A.2d 1241, 1241 (Me.1985) (stating that "not all references to the credibility of the defendant

... are improper," but that the "central question is whether the comment is fairly based on the facts in evidence"). The mandate contained in M. Bar R. 3.7(e)(2)(v) must be scrupulously followed by prosecutors, whose duty is not to "win" the State's case, but to see that justice is done. *See State v. Smith,* 456 A.2d 16, 17–18 (Me.1983).

cial, nor the proceedings so tainted, as to deprive Clark of a fair trial. *See Pelletier,* 673 A.2d at 1330; *Dube,* 598 A.2d at 744. The issue in this case was not whether Clark had shot and killed Robert Wagner; Clark testified during the trial that he had done so. The issue before the jury was whether that killing occurred in self-defense, as Clark claimed. The record overwhelmingly supports the ultimate factual findings that, not only did Clark shoot and kill Wagner, but that Clark did not do so in self-defense. The strength of the State's case, which included all of Clark's admitted actions, referenced above, as well as forensic evidence presented through the medical examiner, convinces us that Clark has not demonstrated that any error or impropriety prejudicially affected his substantial rights.

[¶ 14] Moreover, the trial court repeatedly informed the jurors that comments made in closing argument are not evidence. *See State v. Langill,* 567 A.2d 440, 442 (Me.1989) (stating that the trial court "cured any impropriety caused by the prosecutor's statements" when it instructed the jury that "any statements or comments made by the lawyers in the case" are not evidence and that the jury is the judge of the facts); *see also Young,* 2000 ME 144, ¶ 7, 755 A.2d at 548–49 (noting "the crucial role of the trial court as a check to prosecutorial excesses, it being in the best position to assess the 'feel' of the trial and to take the necessary corrective action when misconduct occurs to undo the prejudice") (citing Robert W. Clifford, *Identifying and Preventing Improper Prosecutorial Comment in Closing,* 51 Me. L.Rev. 241, 244, 257–67 (1999)); *Borucki,* 505 A.2d at 94 (stating that an appellate court "must be reluctant to reverse a judgment on the basis of an error not brought to the attention of the trial court").

**C. Attacks on the Integrity of Defense Counsel**

[¶ 15] Clark claims that the prosecutor unfairly impugned his attorney's integrity by suggesting that the attorney may have told Clark's brother and father what to say during their testimony. Not only did Clark not object to the challenged statements made by the prosecutor during cross-examination of witnesses, but our review shows that those comments were not improper. The prosecutor's comments, based on the evidence presented at trial, were an attempt to have the jurors discredit the testimony of Clark's witnesses and were not, as alleged, an attack on Clark's counsel.

**D. Clark's Drug Use**

[¶ 16] The trial court ruled in limine that the State would not be allowed to refer to Clark's prior drug use during its presentation in chief. Clark argues that the State violated this ruling by asking a witness "[W]hat were the nature of some of these company parties," and "Why did you leave Sebago Lake Mortgage." Neither question, however, elicited an answer indicating that Clark used drugs. The record simply does not reflect any violation of the in limine order by the prosecutor.

**II. CLARK'S PHOTOGRAPH**

[¶ 17] We next consider the trial court's evidentiary ruling excluding the photograph of Clark, reviewing the court's decision only for abuse of discretion. *State v. Francis,* 539 A.2d 213, 215 (Me. 1988); *see also State v. Moontri,* 649 A.2d 315, 317 (Me.1994) (stating that it is "settled law in this jurisdiction that the admissibility of photographs is left largely to the discretion of the presiding Justice" (quotation marks omitted)). Having viewed the photograph, and given Clark's opportunity

to testify extensively at trial as to what happened during the arrest depicted in the photograph and how that incident added to his distrust of the Portland Police Department, we cannot conclude that the trial court abused its discretion in ruling the photograph inadmissible pursuant to M.R. Evid. 403.

## III. SUFFICIENCY OF THE EVIDENCE

██ [¶ 18] Finally, viewing the evidence in a light most favorable to the State as we must, we conclude that the factfinder could rationally have found beyond a reasonable doubt every element of the offense charged, and therefore, that the evidence is sufficient to support Clark's conviction. *See State v. Moores,* 2006 ME 139, ¶ 7, 910 A.2d 373, 375; *see also State v. Michaud,* 1998 ME 251, ¶ 19, 724 A.2d 1222, 1230 ("When viewing the evidence in the light most favorable to the State, [we determine whether] the evidence is sufficient to disprove every element of self-defense beyond a reasonable doubt.").

The entry is:

Judgment affirmed.