**STATE of Maine**

v.

**Kenneth McDONALD.**

Supreme Judicial Court of Maine.

Argued Sept. 14, 1983.

Decided March 6, 1984.

David W. Crook, Dist. Atty., Charles K. Leadbetter, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

Lipman & Parks, P.A., Sumner H. Lipman, Barbara L. Raimondi (orally), Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

ROBERTS, Justice.

Kenneth McDonald appeals from his conviction of attempted murder, 17–A M.R.S.A. § 152, aggravated assault, 17–A M.R.S.A. § 208, and reckless conduct with a firearm, 17–A M.R.S.A. § 211, following a jury trial in Superior Court, Kennebec County. McDonald contends that during final argument to the jury the prosecutor

made an impermissible reference to the defendant's election not to testify and committed other improprieties. Because we agree, we vacate the judgment of conviction.

We need not address the particular merits of each of McDonald's claims, since we find that the entire thrust of the prosecutor's closing statement was prejudicial. We specifically decline to re-examine, in the context of the preserved errors before us, our holding in *State v. Tibbetts,* 299 A.2d 883 (Me.1973),[1] as the circumstances of this case make such a reconsideration unnecessary.

McDonald was accused of shooting his girlfriend, Margaret Durgin, at close range with a 12 gauge shotgun. The defendant entered pleas of not guilty and not guilty by reason of insanity, pursuant to M.R. Crim.P. 11(a). In addition to the insanity defense, McDonald's attorney sought at trial to generate doubt concerning the requisite intent element by showing that McDonald, throughout the operative period surrounding the shooting, was functioning under an "alcoholic blackout." The defense sought specifically to show that, on the day of the shooting, McDonald was so intoxicated that he lacked sufficient reasoning capacity to form the requisite intent.

In his closing argument to the jury, the prosecutor made numerous disparaging references to the defenses of the accused. He stated, *inter alia,* that

The reality is that Ken McDonald appreciated and understood the wrongfulness of his conduct. The reality is that he knew the consequences.... He knew the consequences to Maggie, the consequences to her was a funeral, and the consequences to him. He thought he would be going to jail for the rest of his life. Just stop and think for a minute about that. If you were in the defendant's shoes right now, as he sits here in the courtroom today, and you are unable—strike that. You are unwilling to be man enough to stand up and say, yes, I did it.... You are looking for a way out. You analyze the case.... You see eye witness after eye witness after eye witness.... Everybody saw you do it....

Is it not a human response that if at all possible, if there is a one percent chance of avoiding punishment that you are going to grasp at that one percent chance? ... How would you try to avoid that responsibility? You try to avoid it this way, yes, I did it, but I didn't intend to do it. Yes, I shot Maggie Durgin, but I didn't mean to. Yes, I shot Maggie Durgin, but you know, I'm not the brightest person in the world, and you know I drink.

How many times in your life have you heard people excuse their actions by saying I had too much to drink...? Isn't that a convenient fallback?

The prosecutor went on to describe the defense raised by the accused as "a very common excuse," and dismissed the evidence submitted by the defense concerning the accused's mental state as "red herrings" and "smoke screens." Although the prose-

1. In *State v. Tibbetts,* we held that:

Impermissible prosecutorial comment can never be deemed harmless error as a matter of law under either of two circumstances:

1. A direct, non-ambiguous and unequivocal prosecutorial comment on the failure of a criminal defendant to become a witness.

2. An indirect prosecutorial comment which, without equivocation or ambiguity, suggests that a jury must accept as true the State's evidence because it is undenied by a criminal defendant as a witness.

If a prosecutorial comment is made that falls into neither of the preceding classifica-

tions the State must demonstrate beyond a reasonable doubt, if the comment is to be deemed harmless, that the record contains no evidence, either direct or circumstantial, which would rationally support acquittal.

299 A.2d at 889 (footnotes omitted). The State would have us re-examine *Tibbetts* in the light of federal standards set out in *United States v. Hasting,* —— U.S. ——, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), and *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

cutor may attack the sufficiency of defense evidence, he is not at liberty to disparage the legal principles upon which the defense is based.

■ Such prosecutorial misconduct has a debilitating effect on the entire judicial process, and will not be tolerated. The insanity defense has been accepted and applied in Maine for over a century.[2] The legislature, by statutory enactment, "has made the moral judgment that the accused is not responsible if the unlawful act was the product of a mental disease or defect." *State v. Durgin,* 311 A.2d 266, 268 (Me. 1973). "Since the Legislature has seen fit to declare this rule absolving persons from criminal responsibility in the first instance, we think it is for the Legislature to change that rule if it deems it unworkable, unwise or improvidently ordained." *Id.*

■ The accused has the unquestioned right to raise the defense of insanity, 17–A M.R.S.A. § 39, or the defense of intoxication, 17–A M.R.S.A. § 37, and the prosecuting attorney is not, thereby, relieved of the burden of presenting sufficient evidence to prove beyond a reasonable doubt all elements of the alleged offense. *See State v. Bridges,* 413 A.2d 937, 941–42 (Me.1980). In the case before us, the closing statements of the prosecutor were clearly designed to awaken in the jury a suspicion that the defenses were merely a subterfuge employed by the defendant to evade responsibility for his acts.

■ Such tactics create the danger that a verdict may be rendered based on impermissible criteria. On other occasions this Court has held that the prosecutor has a responsibility to help insure a fair trial. *State v. Littlefield,* 374 A.2d 590, 594 (Me. 1977); *State v. Wyman,* 270 A.2d 460, 463 (Me.1970). We reaffirm that principle today. Denigration of defense strategy may

not replace the presentation of evidence sufficiently persuasive to obtain a conviction.

The entry is:

Judgment vacated.

Case remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

2.  The defense, conceptually, can trace its lineage at least as far back as the 12th Century, to a passage in *Leges Henrici Primi* ch. 5, § 28. 1 F. Pollock & F. Maitland, *The History of English Law* 99–101 (2d ed. 1923). From this descended the classic aphorism, *actus non facit reum, risi mens sit rea,* translated by Black-

stone as "an unwarrantable act without a vicious will is no crime at all." 4 W. Blackstone, *Commentaries* \*21 (W. Lewis ed. 1898). The defense received its first judicial recognition in *M'Naghton's Case,* 8 Eng.Rep. 718 (1843), and was adopted by this Court in *State v. Lawrence,* 57 Me. 574 (1870).