1998 ME 85

## STATE of Maine

### v.

## Daniel STANTON.

Supreme Judicial Court of Maine.

Argued Oct. 8, 1997.
Decided April 29, 1998.

Stephanie Anderson, District Attorney, Julia A. Sheridan, Asst. Dist. Atty. (orally), Portland, for State.

Benet Pols (orally), Brunswick, (new counsel on appeal), for defendant.

Before WATHEN, C.J., and ROBERTS, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

[¶ 1] Daniel Stanton appeals from the judgment of conviction entered in the Superior Court (Cumberland County, *Fritzsche, J.*) following a jury verdict finding him guilty of three counts of gross sexual assault in violation of 17–A M.R.S.A. § 253(1)(B) (Supp. 1997).[1] Stanton contends he was denied a

---

1. 17–A M.R.S.A. § 253(1)(B) provides in relevant part: "A person is guilty of gross sexual assault if that person engages in a sexual act with another person and ... [t]he other person, not the actor's spouse, has not in fact attained the age of 14 years." A "sexual act" is defined as "[a]ny act

fair trial because the court allowed impermissible hearsay to be admitted in evidence and the prosecutor engaged in an improper closing argument. We affirm the judgment.

[¶ 2] The victim, who was seven years old at the time of the assaults, testified at the trial that Stanton "rubbed his penis on [her] vagina" on at least three occasions, once each in the living room, the bathroom, and her mother's bedroom. These incidents occurred during the time that Stanton was dating her mother and staying overnight on a regular basis. The victim's report of the assaults to her mother was prompted by her mother's questioning of the victim's knowledge of sexual matters after the victim mentioned that a classmate of hers told her what "sexy" means. On cross-examination Stanton tried to elicit testimony that the victim was influenced by aggressive questioning from her mother to allege incidents that never occurred.

## FIRST COMPLAINT

[¶ 3] Stanton initially contends that hearsay statements of the victim were improperly admitted through the testimony of the mother.[2] He recognizes that the "first complaint rule" allows hearsay statements concerning the bare fact of a complaint of sexual abuse, but contends the admission of the mother's testimony violated the first complaint rule because it revealed the identity of the perpetrator and other details of the abuse. Specifically, Stanton challenges the mother's testimony, admitted over his objection, that the child told her, "Dan said to do this," while making masturbatory motions with her hands, as well as the mother's testimony

regarding a number of incidents and details of penetration that were not testified to by the child.

[¶ 4] The first complaint rule allows the admission of a victim's out-of-court statement to show that the victim had reported a sexual misconduct complaint to a third party. *State v. Weisbrode,* 653 A.2d 411, 414 (Me.1995). "The statements are admissible 'to forestall the natural assumption that in the absence of a complaint, nothing ... had occurred.'" *Id.* (quoting *State v. True,* 438 A.2d 460, 464 (Me.1981)). The first complaint rule "admits only the bare fact that a complaint has been made but not further details." *State v. Dube,* 598 A.2d 742, 744 (Me.1991); *see also* Field & Murray, *Maine Evidence* § 801.11 at 406 (4th ed.1997). In addition to being offered to negate the implications of silence, however, a victim's complaint of sexual assault may also be admitted under other evidentiary theories. For example, the complaint may be admitted to rebut an express or implied charge of recent fabrication pursuant to M.R. Evid. 801(d)(1) or in accordance with the excited utterance hearsay exception pursuant to M.R. Evid. 803(2). *See Dube* at 744.

[¶ 5] Contrary to Stanton's assertion, the record is clear that the testimony of the victim's mother was offered to rebut defense counsel's implied charge that the victim's mother used suggestive questioning to improperly influence the child into making the allegations.[3] Details of the victim's complaint to the mother were therefore relevant and admissible to negate the defense theory of improper influence by demonstrating the reasonableness of the mother's questions.[4]

---

between 2 persons involving direct physical contact between the genitals of one and the mouth or anus of the other, or direct physical contact between the genitals of one and the genitals of the other." 17–A M.R.S.A. § 251(1)(C)(1) (Supp. 1997).

2. M.R. Evid. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

3. In addition to implying during the victim's cross-examination that the mother questioned the victim inappropriately, Stanton made similar

implications during his opening statement and during his cross-examination of the State's medical witness, Dr. Lawrence Ricci.

4. It would have been appropriate for the court to give an instruction explaining the limited purpose for which the mother's testimony was being offered. No request for such a limiting instruction was made, however, and we have "'repeatedly stated that it is not reversible error for the trial court to fail to give a limiting instruction to the jury when none was requested by the defendant.'" *State v. Cloutier,* 1997 ME 96, ¶ 15, 695 A.2d 550, 555 (quoting *State v. Shuman,* 622 A.2d 716, 718 (Me.1993)).

Because the challenged statements were not hearsay, the court committed no error in allowing their admission. *Cf. State v. Eirby*, 663 A.2d 36, 37–38 (Me.1995) (error to exclude statement victim made to officer that "there was a nigger pressing the security bell to get in" when statement was not offered for its truth but to show victim's negative attitude toward African Americans); *State v. Harrigan*, 662 A.2d 196, 197 (Me.1995) (statement offered to establish the factual basis for defendant's state of mind is not hearsay).

## EXPERT TESTIMONY

[¶ 6] Dr. Lawrence Ricci, the Medical Director of the Child Abuse Program at Spurwink Clinic in Portland, examined the victim after her allegation of abuse. He testified on direct examination that his examination of the victim revealed a "significant notch in the inner border of [her] hymen" that was consistent with "some form of penetrating trauma to the hymenal tissue," but that based on the physical examination, he could not tell what object caused the injury nor could he tell on what date or dates the trauma that caused the notching occurred. He testified that the "injury could be a month old, it could be months old, it could be years old."

[¶ 7] During cross-examination, Dr. Ricci conceded that the victim's mother reported to him that the victim had complained of vaginal discomfort at a time prior to Stanton's involvement with the victim's mother. In response, the State, during redirect examination, asked Dr. Ricci if he had an opinion as to whether the victim's injury happened before, during, or after the time Stanton lived with the family. Over Stanton's objection Dr. Ricci testified that in his opinion the injury occurred during the time Stanton was in the household.

[¶ 8] Stanton argues that Dr. Ricci's testimony included hearsay statements of the child that were not necessary for the purpose of medical treatment and were therefore inadmissible.[5] He reasons that because Dr. Ricci testified that the injury probably occurred when Stanton lived in the house, he was necessarily testifying as to statements made by the child, especially in light of the fact that on direct exam he testified that it would not be possible to date the injury solely from the physical exam. Dr. Ricci's testimony, however, does not contain a statement of an out-of-court speaker offered to prove the truth of that speaker's statement. It is simply an opinion. The fact that the prosecutor asked Dr. Ricci to give an opinion based on "[t]he history that Kristina gave you coupled with the medical findings, and your experience and training, and all of the children that you've examined," does not turn the opinion into hearsay. *See* M.R. Evid. 703.

## CLOSING ARGUMENT

[¶ 9] Stanton also argues that three aspects of the prosecutor's closing argument denied him a fair trial: (1) the prosecutor's argument that one of the incidents of sexual assault took place in the victim's mother's bed, when the victim testified only to the act occurring in the mother's bedroom; (2) the prosecutor's references to the suffering of the victim; and (3) the prosecutor's disparagement of the defendant's theory of the case.

[¶ 10] Stanton objected to the prosecutor's characterization of the testimony regarding the bedroom incident and the court gave an immediate curative instruction.[6] We

---

5. M.R. Evid. 803(4) provides a hearsay exception for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This exception generally allows admission of statements relating to the cause of an injury, but not statements of fault or blame. *State v. Leone*, 581 A.2d 394, 399 (Me.1990).

6. The court responded to Stanton's objection as follows:

> One of the things that I will tell the jury as part of the jury instructions is that the attorneys' comments are not part of the evidence, that if your memory differs from [their's], it's your memory that counts, and if the point is important enough and you wish to have it read back to be absolutely certain, you have that option available to you.

have held that when a defendant makes no further objection nor moves for a mistrial after objecting to the prosecutor's argument and after receiving a curative instruction from the court, the defendant has failed to preserve the issue for appeal. *State v. Winchenbach,* 658 A.2d 1083, 1085 (Me.1995). *See also State v. Eastman,* 1997 ME 39, ¶ 14, 691 A.2d 179, 184 (defendant's failure to move for a mistrial considered to be acquiescence in the corrective measures taken by the trial judge). Because Stanton failed to move for a mistrial after the court's curative instruction, he has failed to preserve this point for appeal. Moreover, the prosecutor's misstatement regarding the bedroom incident, when considered with the other evidence offered at trial and the court's curative instruction, did not deprive the defendant of a fair trial.

[¶ 11] Stanton did not object to the prosecutor's references to the suffering of the victim or the defendant's theory of the case. Because these portions of the prosecutor's argument were not objected to, they are reviewed under the obvious error standard. *State v. Ashley,* 666 A.2d 103, 105 (Me.1995). "Error is obvious only when it is so highly prejudicial and so taints the proceedings as virtually to deprive the defendant of a fair trial." *State v. Pelletier,* 673 A.2d 1327, 1330 (Me.1996).

[¶ 12] In *State v. Greene,* 512 A.2d 330 (Me.1986), we upheld a defendant's conviction even though the prosecutor referred to the complainant as "this poor little girl, 11 year-old victim." *Id.* at 334. We cautioned prosecutors, however, regarding the limits of their advocacy: "It is clearly improper for a prosecutor to appeal to the jury's sympathy with emotionally charged and inflammatory remarks." *Id.*

[¶ 13] A review of that portion of the prosecutor's argument challenged on appeal here indicates that the prosecutor was attempting to prod the jury to consider the victim's motivation in testifying, not to engender sympathy for the victim. The remarks, taken in context, were not emotionally charged nor inflammatory, and were a reasonable response to the defendant's theory that the victim fabricated the charges in order to get attention from her mother. *See id.* (argument based on an analysis of the evidence, for any position with respect to the credibility of a witness, is not ethically objectionable).

[¶ 14] Stanton finally argues that the prosecutor's characterization of the defense as nonsensical improperly disparaged the defense theory. Stanton relies on *State v. McDonald,* 472 A.2d 424· (Me.1984), for the proposition that a prosecutor is not at liberty to disparage the legal principles on which the defense is based. In *McDonald* we vacated a defendant's conviction where the prosecutor termed the defense raised by the accused "a very common excuse," and dismissed the defense evidence regarding the accused's mental state as "red herrings" and "smoke screens." *Id.* at 425. We pointed out in *McDonald,* however, that nothing prevents the prosecutor from attacking the sufficiency of the defense evidence. *Id.* at 425–26.

[¶ 15] The prosecutor's statements in the present case, when read in their entirety, show that they were intended to draw attention to the lack of evidentiary support for the defendant's legal theory, not to disparage the theory itself. The remarks did not rise to the level of the prosecutor's remarks in *McDonald* and were not so highly prejudicial that they virtually deprived the defendant of a fair trial.

The entry is:

Judgment affirmed.

---

So at the moment I will simply note that there is a dispute as to what was said, and allow you to resolve it in those fashions, either from your memory or the record should it matter to you later.