NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific*</u> <u>*Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| DEVIN M. ROSSITER,<br><br>      Appellant,<br><br>  v.<br><br>STATE OF ALASKA,<br><br>      Appellee. | Court of Appeals No. A-11300<br>Trial Court No. 1KE-11-197 CR<br><br><br>O P I N I O N<br><br><br>No. 2568 — September 15, 2017 |

Appeal from the Superior Court, First Judicial District, Ketchikan, Trevor N. Stephens, Judge.

Appearances: Marjorie Mock, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge. [*]

Judge MANNHEIMER, writing for the Court.
Judge ALLARD, concurring.

---

 [*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska constitution and Administrative Rule 24(d).

Following a jury trial, Devin M. Rossiter was convicted of second-degree murder for stabbing a man. Rossiter was also convicted of tampering with evidence for later cleaning the push-knife he used in this stabbing.

In this appeal, Rossiter argues that his murder conviction should be reversed because the prosecutor made improper arguments to the jury. For the reasons explained here, we agree that the prosecutor made a number of improper arguments and that the cumulative effect of those arguments undermined the fundamental fairness of Rossiter's trial. We therefore reverse Rossiter's conviction for second-degree murder.

*Underlying facts*

On March 12, 2011, eighteen-year-old Devin Rossiter was in a trailer park in Ketchikan; he was rifling through someone else's car, apparently looking for cigarettes.

This car belonged to the elderly parents of Nick Stachelrodt. When Stachelrodt saw what Rossiter was doing, he went to the car and pulled Rossiter out. As Stachelrodt pulled Rossiter out of the car and into the driveway, Rossiter began to struggle with Stachelrodt. Rossiter later told the police that he "flipped out" because he was afraid Stachelrodt was going to harm him. During this struggle, Rossiter used a push-knife (a small dagger with a perpendicular grip) to stab Stachelrodt, once in the chest and once in the neck. The stab wound to Stachelrodt's chest severed an artery, and Stachelrodt died at the scene. Rossiter later used mouthwash or alcohol to clean off his knife.

Based on this incident, Rossiter was indicted for second-degree murder and tampering with evidence.[1] At his trial, Rossiter's attorney argued that Rossiter should

---

[1] AS 11.41.110(a)(1)-(2) and AS 11.56.610(a)(1), respectively.

be acquitted of second-degree murder because he stabbed Stachelrodt in self-defense, under the fear that Stachelrodt was going to kill or seriously harm him. The defense attorney argued in the alternative that Rossiter was guilty only of manslaughter because he acted in the heat of passion. [2]

Prior to delivering the State's closing argument, the prosecutor furnished the defense attorney and the trial judge with copies of a PowerPoint presentation (both text and photographs) that the prosecutor intended to show to the jury during his summation. Some of the prosecutor's slides addressed Rossiter's defenses to the murder charge.

One of these slides read, "Nick Stachelrodt did not deserve to die". The next slide then told the jurors:

The only way you can find the defendant not guilty of Murder in the Second Degree is:
– you disagree [with the preceding slide, and] Nick Stachelrodt deserved what he got
(self-defense / heat of passion)

Rossiter's attorney objected to this slide, arguing that it impermissibly shifted the burden of proof from the State to his client. The trial judge overruled this objection, concluding that the slide did not, on its face, shift the State's burden of proof. The judge told the defense attorney that if the prosecutor actually made a burden-shifting argument during his summation, the defense attorney should renew his objection.

Throughout the prosecutor's summation, he repeatedly emphasized that the question before the jury was whether Nick Stachelrodt deserved to die. The prosecutor began his summation with a picture of Nick Stachelrodt that described him as "married [for] 25 years", a "father of three", a "grandfather of one", and a "caretaker for his

---

[2] *See* AS 11.41.115(a) and (f)(2).

parents." This picture of Stachelrodt was followed by a mugshot-like picture of Devin Rossiter that described him as a person who was "planning on leaving Alaska" and "celebrating leaving Alaska."

The prosecutor then proceeded to argue that the jury was required to convict Rossiter of murder unless the jurors concluded that Stachelrodt deserved to die. Here is one example:

> *Prosecutor*: What is the offensive thing that Nick Stachelrodt did? Because believe me, if you convict Mr. Rossiter of anything other than murder in the second degree, or [if you] acquit Mr. Rossiter, send him home, then you have to conclude that Nick Stachelrodt did something horrible to deserve what happened to him.

Later, in his summation, the prosecutor told the jurors:

> *Prosecutor*: Nick Stachelrodt did not deserve to die [for pulling Rossiter out of the car]. The only way that you can find [that] the defendant is not guilty of murder in the second degree is if you disagree with that premise — that Nick Stachelrodt did not deserve to die for what he did.
>
> . . .
>
> So the only way you can find him not guilty of murder in the second degree is if you [conclude that] Nick Stachelrodt deserved what he got — or you misunderstand the law.

Still later in his summation, the prosecutor told the jurors that the essence of a claim of self-defense was that "the guy deserved it." And still later, the prosecutor told the jurors:

> *Prosecutor*: [I]f you conclude that I have not proven the absence of self-defense here, then [what] you're saying [is

that] Nick Stachelrodt deserved what he got, and Devin Rossiter walks out the door.  Please don't let that happen.

Finally, toward the end of his argument, the prosecutor returned to his theme that Nick Stachelrodt was a good man who did not deserve to die.  The prosecutor told the jury that "[w]e should be thankful that there are such people as Nick Stachelrodt":

> *Prosecutor*:  I'm not going to get all preachy and "it takes a village" on you.  But I will say, Nick Stachelrodt's pulling this young man out of the car and not responding with name-calling or violence or threats, but with "we need to talk" and "you need to learn to respect your elders", that there's nothing that could even be remotely criticized about that, let alone justified his being murdered.

The jury found Rossiter guilty of second-degree murder, and Rossiter now argues that his trial was rendered unfair by the combination of the PowerPoint slides and the various statements made by the prosecutor.

More specifically, Rossiter argues that the prosecutor's slides and statements to the jury mischaracterized the law of self-defense and impermissibly shifted the burden of proof to the defense, by implying that the jury should presume Rossiter's guilt unless the jurors affirmatively found that Nick Stachelrodt "deserved what he got."

As we explain in this opinion, we agree with Rossiter that the prosecutor grossly mischaracterized the law of self-defense.  Because we conclude that the prosecutor's misstatements of the law probably affected the jury's verdict, we reverse Rossiter's conviction.

*Why we reverse Rossiter's murder conviction*

The prosecutor's PowerPoint slides and his statements to the jury significantly mischaracterized the law of self-defense.

We acknowledge that, even though Rossiter's attorney objected to portions of the prosecutor's slide presentation, the defense attorney did not object to the prosecutor's closing argument — despite the trial judge's express invitation for him to do so. Accordingly, to the extent that Rossiter now argues that the prosecutor's final argument misstated the law of self-defense, or impermissibly disparaged the defense theory of the case, Rossiter must show plain error. But we conclude that Rossiter has met this burden.

When a defendant charged with homicide raises a claim of self-defense, the question for the jury is whether there is a reasonable possibility that the defendant used deadly force (1) in reasonable response to an *actual threat* of unlawful and imminent death, serious physical injury, sexual assault, robbery, or kidnapping, *or* (2) under the *reasonable belief* (even if mistaken) that he or she was about to be subjected to unlawful death, serious physical injury, sexual assault, robbery, or kidnapping.[3]

The availability of self-defense does not hinge on whether the deceased "deserved to die". The prosecutor's argument was a gross distortion of the law of self-defense. Indeed, because our law declares that self-defense is established if the defendant made a reasonable mistake regarding the need to use deadly force, there will be times when a homicide will be justified by self-defense even though the victim actually did nothing to assault the defendant.

---

[3]   *See* AS 11.81.330, AS 11.81.335, and AS 11.81.340; *David v. State*, 698 P.2d 1233, 1235 (Alaska App. 1985).

But in the prosecutor's summation to the jury, he repeatedly told the jurors that Rossiter's claim of self-defense would be valid in only one circumstance: only if Nick Stachelrodt deserved to die. This error was so obvious, and so egregious, that the trial judge was required to intervene — even if Rossiter's attorney had never objected.

We also conclude that the prosecutor engaged in another form of improper argument by suggesting that Rossiter's claim of self-defense was a ruse invented by his defense counsel. As we explained earlier, the defense theory of self-defense was that Rossiter reacted in fear that Stachelrodt would kill or seriously injure him, or perhaps rape him. Here is how the prosecutor responded to this claim:

> *Prosecutor*: [O]f all the things that [defense counsel] could emphasize in his opening statement, why would he talk about sexual assault instead of simply assault — a serious assault ... [?] Well, the [defense attorney's] emphasis on sexual assault is because if you come to the conclusion that you don't like Nick Stachelrodt, [if] you think he's a bad man, [then] it's easier for you to come to the conclusion that Devin Rossiter was justified in killing him. And that should offend you a little bit. Because what Nick Stachelrodt's family doesn't know, but [what] I know, is that no matter how good a life you lead, no matter what you do with your life, if you are killed randomly by a drunk nineteen-year-old who's going through your car, a lawyer will stand up in a court of law and say that you were trying to rape someone. That should strike you as ... [a] somewhat offensive argument.

This Court has previously drawn a distinction between (1) permissible prosecutorial argument that a defendant's version of events is not credible, given the evidence in the case, and (2) impermissible argument that "disparages the legitimacy"

of the legal theory or defense asserted by the defendant. [4]  The prosecutor's argument in Rossiter's case fell into this latter category.  The prosecutor implied that Rossiter's defense attorney — indeed, defense attorneys in general — would connive to advance false claims of self-defense, hoping that jurors would view the victim in a bad light and would conclude that the victim was not worthy of the law's protection.  In other words, the prosecutor's argument was "designed to awaken in the jury a suspicion that the [defense was] merely a subterfuge employed by the defendant to evade responsibility for his acts." [5]  This is not permitted.

The remaining question is whether the prosecutor's improper argument requires reversal of Rossiter's murder conviction.  As we have explained, the prosecutor repeatedly asked the jury to employ an incorrect formulation of the law of self-defense.  He framed the issues to be decided as a referendum on the value of the victim's life.  And he suggested that the whole issue of self-defense was the subterfuge of a conniving defense attorney.  Having carefully considered the record, we conclude that the inflammatory and misleading nature of the prosecutor's PowerPoint presentation and closing argument undermined the fundamental fairness of Rossiter's trial.  We believe that these improper remarks appreciably affected the jury's decision. [6]

Accordingly, we REVERSE Rossiter's conviction for second-degree murder.

---

[4]  *See Williams v. State*, 789 P.2d 365, 369 (Alaska App. 1990).

[5]  *State v. McDonald*, 472 A.2d 424, 425-26 (Me. 1994), discussed in *Rogers v. State*, 280 P.3d 582, 594 (Alaska App. 2012).

[6]  *Love v. State*, 457 P.2d 622, 634 (Alaska 1969) (holding that, for instances of non-constitutional error, the test for harmlessness is whether the appellate court "can fairly say that the error did not appreciably affect the jury's verdict").

Judge ALLARD, concurring.

I agree with the majority opinion that the prosecutor's closing arguments were improper and constituted a gross distortion of the law. I write separately only to point out that Rossiter's conviction for second-degree murder was not a foregone conclusion and that manslaughter was a plausible verdict in this case. A conviction for second-degree murder required the State to prove not only that Rossiter acted recklessly when he killed Stachelrodt (and that he did not do so in self-defense), but also that Rossiter acted "under circumstances manifesting an extreme indifference to the value of human life" [1] — *i.e.*, that Rossiter's actions constituted "the type of heightened recklessness that is equivalent to purposeful or knowing homicide." [2]

---

[1]   AS 11.41.110(a)(2).

[2]   *Jeffries v. State*, 169 P.3d 913, 917 (Alaska 2007).