NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

BRANDON D. LEDBETTER,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12910
Trial Court No. 1SI-16-00179 CR

O P I N I O N

No. 2693 — March 5, 2021

Appeal from the Superior Court, First Judicial District, Sitka, David V. George, Judge.

Appearances: Emily L. Jura, Assistant Public Defender, and Beth Goldstein, Acting Public Defender, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge HARBISON.

The State charged Brandon D. Ledbetter with one count of second-degree assault and one count of third-degree assault for stabbing another man, Patrick Parrish,

with a pocketknife during a bar fight.[1]  At trial, Ledbetter claimed that he acted in self-defense after Parrish choked him nearly to the point of unconsciousness.  The jury rejected this defense and found Ledbetter guilty of both counts of assault.  The trial court later merged the two counts, leaving Ledbetter with a single conviction for second-degree assault based on this incident.

On appeal, Ledbetter argues that the prosecutor made a number of improper arguments to the jury, which deprived him of a fair trial.  For the reasons discussed in this opinion, we agree with Ledbetter that the trial court's failure to intervene during the prosecutor's closing argument amounted to plain error and that Ledbetter's conviction must therefore be reversed and his case remanded for retrial.

*Underlying facts and trial proceedings*

In August 2016, Brandon Ledbetter encountered Patrick Parrish in a bar in Sitka.  Motivated by a recent dispute he had with Parrish, Ledbetter approached Parrish from behind, pulled him off his barstool, and proceeded to strike him.

At trial, Ledbetter did not contest his role in instigating the fight.  Instead, he claimed that he subsequently attempted to withdraw, and that Parrish not only refused to disengage, but in fact escalated the violence by choking Ledbetter to the point where he could not breathe and thought he would lose consciousness.  According to Ledbetter, he feared for his life, so he pulled out a pocketknife and stabbed Parrish in the leg to force him to release his grip on Ledbetter's throat.  Ledbetter explained that he deliberately chose to stab Parrish in the leg, rather than a more vital organ, because he "wanted to make [Parrish] let go" but "didn't want to kill the guy."

---

[1]  AS 11.41.210(a)(1) and AS 11.41.220(a)(1)(A), respectively.

Parrish disputed this account. He denied choking Ledbetter or hearing Ledbetter communicate a desire to withdraw. According to Parrish, the stabbing occurred while he and Ledbetter were actively exchanging blows on the floor of the bar.

During closing arguments, both parties urged the jurors to focus their deliberations on the issue of self-defense. But in making this argument, the prosecutor, on seven separate occasions, erroneously told the jurors that if they concluded that Ledbetter was authorized to use deadly force, this was equivalent to concluding that Ledbetter had the right to kill Parrish.[2]

Additionally, the prosecutor gave the jury an inflammatory example of the type of case that he and other prosecutors — i.e., "guys on my side of the caption" — would consider a legitimate self-defense case. He described a case in which a young woman is awoken by a naked and "obviously physically aroused" older male stalker holding a knife and standing over her bed. The prosecutor suggested that if the jurors were in a situation like that of the young woman, they would be justified in "doing what [they] had to do," i.e., shooting and killing the intruder. According to the prosecutor,

---

[2]    These statements are: (1) "[I]f you believe that the defendant was authorized by the law to use deadly force then you have to believe that he was authorized by the law to take a life."; (2) "[O]nce you're authorized to use deadly force, you're authorized to take a life."; (3) "Because what does deadly force mean? Deadly force means you could kill Mr. Parrish, he's authorized to use force that could take his life."; (4) "If you believe [Ledbetter's account of the stabbing], under the law of the state of Alaska, you're saying that it authorizes him to kill Mr. Parrish."; (5) "So what we're talking about here in this case is did he have a right to stab him? Did he have a right to kill him? If he had a right to stab him, then you're concluding he had a right to kill him."; (6) "And it might've . . . sounded like inflated rhetoric when I said, oh, well, if the defendant has the right to stab, he has the right to kill. Well, that's what the law is. Once the law authorizes the use of deadly force, it authorizes it up to the taking of a human life."; and (7) "Look to the circumstantial evidence of whether or not [Ledbetter] was strangled so seriously that the law gives him the right to kill another person."

under those circumstances, "we're not charging you with anything." The prosecutor proclaimed that while the stalking victim would be authorized by law to shoot her sexually aroused attacker, Ledbetter was not authorized to stab Parrish in the leg.

The prosecutor also referenced the "Trayvon Martin case," a well-known case involving the application of Florida's "Stand Your Ground" self-defense statute. In that case, the defendant was acquitted after shooting and killing an unarmed teenager. The case received national attention and is well-known for its polarizing effect on public opinion.[3] The prosecutor analogized Ledbetter's stabbing of Parrish to the shooting of Trayvon Martin, noting that under the respective "Stand Your Ground" statutes in Alaska and Florida, the law did not impose a duty to retreat from a public place before resorting to deadly force.

Finally, the prosecutor apologized to the jury for getting "worked [up]" during trial, particularly during Ledbetter's testimony and when discussing Ledbetter's self-defense claim. He explained that sometimes he felt like he was the only one who cared about the rules, and that his zeal for the rules sometimes caused him to get overly excited when faced with a self-defense claim such as Ledbetter's, which he believed "the rules" did not authorize. In concluding his remarks, the prosecutor exhorted the jury to "do the right thing" by convicting Ledbetter of second- and third-degree assault.

Ledbetter's attorney did not object to any of these remarks. The jury found Ledbetter guilty of second- and third-degree assault, and, as we have explained, the trial court later merged the two counts into a single conviction for second-degree assault.

---

[3] *See, e.g.*, David Carr, *A Shooting, and Instant Polarization*, The New York Times, April 1, 2012, available at https://www.nytimes.com/2012/04/02/business/media/the-polarization-of-a-shooting.html (last visited January 19, 2021) ("[T]he killing in February of Trayvon Martin . . . now threatens to divide a country.").

*Why we reverse Ledbetter's conviction*

On appeal, Ledbetter contends that the prosecution's improper remarks during closing argument rendered his trial fundamentally unfair. As we explain in this opinion, we agree with Ledbetter that a large portion of the prosecutor's closing argument either was a misstatement of the law or was impermissible argument that disparaged the legitimacy of Ledbetter's defense.[4]

Because Ledbetter's attorney did not object to any of the arguments that he claims were unfairly prejudicial, Ledbetter must show plain error — *i.e.*, error that (1) was not the result of intelligent waiver or a tactical decision not to object; (2) was obvious or apparent to any competent judge or lawyer; (3) affected substantial rights; and (4) was prejudicial.[5] We conclude that Ledbetter has met this burden. The impermissible nature of the prosecutor's arguments was obvious and requires reversal of Ledbetter's conviction.

We first note that both our case law and the American Bar Association's Standards for Criminal Justice restrict a prosecutor's closing argument to "the evidence presented at trial and the inferences that may fairly be drawn therefrom."[6] Prosecutors are prohibited from "expressing a personal belief as to the evidence, from making appeals calculated to inflame passions and prejudices of the jury, and from advancing

---

[4]  *See Hess v. State*, 435 P.3d 876, 881-82 (Alaska 2018); *cf. Williams v. State*, 789 P.2d 365, 369 (Alaska App. 1990) (differentiating between permissible, fact-based argument that a defendant's version of events was not credible and impermissible argument that "purport[s] to disparage the legitimacy of any legal theory or defense asserted by [the defendant]").

[5]  *Adams v. State*, 261 P.3d 758, 764, 773 (Alaska 2011).

[6]  *Patterson v. State*, 747 P.2d 535, 538 (Alaska App. 1987) (citing ABA *Standards for Criminal Justice* § 3-5.8 (2d ed. 1982)); *see also* ABA *Standards for Criminal Justice* § 3-6.8 (4th ed. 2017).

arguments based on the consequences of the verdict or on issues other than the guilt or innocence of the accused."[7]

As we have explained, Ledbetter claimed that he acted in self-defense — that he stabbed Parrish only because he feared for his life when Parrish began choking him, and that he deliberately chose to stab Parrish in the leg, rather than another part of the body, because he "wanted to make [Parrish] let go" but "didn't want to kill the guy."

The prosecutor's repeated assertions that Alaska's self-defense law equates "the right to stab" with the "right to kill" was a misstatement of the law that directly undercut Ledbetter's theory of the case. Under AS 11.81.335, a person is authorized to use deadly force upon another person when and "to the extent" the person reasonably believes it is necessary to avert death or certain other serious harm. However, even in circumstances when a person is permitted to use deadly force in self-defense under AS 11.81.335, the person's use of force must be proportionate to the perceived danger.[8]

In other words, the question for the fact-finder is whether the amount of force used by the defendant was reasonable under the circumstances — not whether the same circumstances theoretically might have justified an even greater use of force. Thus, if the jurors accepted Ledbetter's account, they could have concluded that a nonfatal stabbing was reasonable under the circumstances, even if hypothetically causing Parrish's death was not. The prosecutor's claim that the jury had to decide whether

---

[7]   *Patterson*, 747 P.2d at 538; *see also Berger v. United States*, 295 U.S. 78, 88 (1935) (observing that while a prosecutor "may strike hard blows, he is not at liberty to strike foul ones").

[8]   *Jones-Nelson v. State*, 446 P.3d 797, 803 (Alaska App. 2019); *see also Sarah D. v. John D.*, 352 P.3d 419, 432 n.50 (Alaska 2015) (noting that domestic violence self-defense claims, like other self-defense claims, are subject to "necessity and proportionality requirements" (quoting *Dennis Q. v. Monika M.*, 2014 WL 1888270, at *6 (Alaska May 7, 2014) (unpublished))).

Ledbetter had the right under the circumstances to *kill* Parrish was not an accurate statement of the law.[9]

The prosecutor exacerbated this misstatement of the law by arguing to the jury that if Ledbetter had legitimately acted in self-defense, the State would not have charged him with a crime in the first place. The prosecutor repeatedly implied that he, like prosecutors in general, was on the side of truth and "care[d] about the rules," in contrast to defendants like Ledbetter. The picture that the prosecutor painted for the jury — of himself as an experienced, law-abiding truth teller and of the defense as disregarding the rules — had the effect of improperly bolstering the prosecution.

In *Hess v. State*, the Alaska Supreme Court held that the prosecution's disparaging comments were improper and prejudicial because the comments went "directly to the defense's theory of the case and aimed to discredit the defense attorney as well as her argument."[10] In addition, a misstatement of the specific law that forms the basis for determining the defendant's guilt creates a high potential for unfair prejudice and undermines the fundamental fairness of the trial.[11] The prosecutor's comments in this case were improper for the same reasons.

Added to these already prejudicial arguments, the prosecutor's remarks digressed from the contested issues in the case to discuss a high-profile example of the application of another state's "Stand Your Ground" law — a law not implicated by the facts of Ledbetter's case. Not only was this issue irrelevant to the jury's task of determining Ledbetter's guilt under Alaska law, but the prosecutor's comments invoking

---

[9]   *See State v. Walker*, 887 P.2d 971, 978 (Alaska App. 1994).

[10]  *Hess v. State*, 435 P.3d 876, 882 (Alaska 2018).

[11]  *See Rossiter v. State*, 404 P.3d 223, 226 (Alaska App. 2017).

the politically charged "Trayvon Martin case" had a high potential for improperly inflaming the passions and prejudices of the jury.[12]

And finally, the prosecutor ended his argument by exhorting the jury to "do the right thing" — a comment almost indistinguishable from, but in some ways more egregious than, an exhortation for the jury to "do its job," which both this Court and the Supreme Court have condemned as exerting undue pressure on the jury's verdict.[13]

Having carefully considered the record in this case, we conclude that the repetitive nature of the prosecution's erroneous characterizations of the law of self-defense, especially combined with the prosecutor's other inflammatory and prejudicial remarks, amounted to plain error.[14]

*Conclusion*

For the aforementioned reasons, we REVERSE Ledbetter's conviction and REMAND this case for a new trial.

---

[12] *See Noel v. State*, 754 P.2d 280, 282 (Alaska App. 1988) ("The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law." (quoting ABA *Standards for Criminal Justice* § 3-5.8(d) (2d ed. 1982))).

[13] *See United States v. Young*, 470 U.S. 1, 18 (1985); *Noel*, 754 P.2d at 282-83.

[14] *See Adams v. State*, 261 P.3d 758, 764, 773 (Alaska 2011).